1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kenneth Harris, Jr., individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>Wells Fargo Bank, N.A.,<br><br>                Defendant. | Consolidated Under Case No. 2:17-cv-01146-PHX-DJH<br><br><br>**COLLECTIVE ACTION SETTLEMENT AGREEMENT AND RELEASE** |
| Jordan Kerness, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>Wells Fargo Bank, N.A.,<br><br>        Defendant. | |

426154

This Collective Action Settlement Agreement and Release (hereinafter "**Settlement**" or "**Agreement**") is made and entered into by and between Plaintiffs Kenneth Harris, Jr. and Jordan Kerness (hereinafter, "**Plaintiffs**" or "**Collective Representatives**"), individually and on behalf of the settlement collective, and Defendant Wells Fargo Bank, N.A. (hereinafter "**Defendant**" or "**Wells Fargo**") (collectively, "**the Parties**"), and subject to the approval of the Court.

1.  On April 18, 2017, Plaintiff Kenneth Harris, Jr. filed a Collective Action Complaint in the United States District Court for the District of Arizona, which initiated Case No. 2:17-CV-01146-PHX-DJH (the "*Harris* **Case**").  On November 6, 2017, Plaintiff Harris filed a First Amended Collective Action Complaint.  The *Harris* Case is brought on behalf of all current and former employees who worked as telephone-dedicated employees for Wells Fargo at the Tempe, Arizona (for the time period, if any, prior to such individuals relocating to Chandler, Arizona) and/or Chandler, Arizona call center locations during the period commencing from December 4, 2014, to the present.  The *Harris* Case alleges that Wells Fargo failed to pay for all overtime wages, in violation of the Fair Labor Standards Act ("FLSA").  There are two opt-in Plaintiffs in the *Harris* Case:  Kenneth Harris, Jr. and Jordan Kerness.

2.  On July 27, 2017, Plaintiff Jordan Kerness filed a Collective Action Complaint in the United States District Court for the District of Arizona, which initiated Case No. 2:17-CV-02516-PHX-DJH (the "**Kerness* **Case**").  The *Kerness* Case is brought on behalf of all current and former employees who worked as telephone-dedicated employees for Wells Fargo at the Rose Garden Lane call center location in Phoenix, Arizona, during the period commencing from December 4, 2014, to the present.  The *Kerness* Case alleges that Wells Fargo failed to pay for all overtime wages, in violation of the FLSA.  There is one opt-in Plaintiff in the *Kerness* Case:

Jordan Kerness.

3.     On October 16, 2018, the Court granted the Parties' Joint Motion to Consolidate the *Harris* Case and the *Kerness* Case for purposes of approval of the collective settlement of these matters (collectively referred to as "**the Action**").  If this Agreement does not become final for any reason, the Parties' willingness to agree to consolidation for purposes of the settlement approval process, will have no bearing on, and will not be admissible in connection with, the issue of whether these matters should be consolidated for any other purposes.

4.     As part of the settlement of this Action and for purposes of this settlement only, Plaintiffs will file a Consolidated Amended Complaint in the Action alleging a cause of action for violation of the Fair Labor Standards Act ("FLSA") on behalf of the Collective Members, as defined herein, for unpaid wages, including unpaid overtime, liquidated damages and other available remedies.  Otherwise, the Consolidated Amended Complaint will be identical to the Complaint.  If this Agreement does not become final for any reason, the Parties' willingness to stipulate to the filing of a Consolidated Amended Complaint shall have no bearing on, and will not be admissible in connection with, these issues in this Action or any subsequent proceeding.  The Parties and their counsel will not offer or make reference to this provisional stipulation for purposes of settlement in any subsequent proceeding in this Action or in any other action.  In addition, if this Agreement does not become final for any reason, the Consolidated Amended Complaint will be null and void and the prior operative Complaints in the *Harris* Case and the *Kerness* Case will be reinstated as the operative Complaints.

426154

5.     On June 27, 2018, the Parties participated in a day-long mediation before Jeffrey Krivis, a well-regarded mediator who has mediated many wage and hour class and collective actions.

6.     Prior to the June 27, 2018 mediation, the Parties engaged in depositions, written discovery and engaged in an informal exchange of information.  Defendant provided Plaintiffs with documentation regarding its policies regarding timekeeping and overtime and provided data compilations regarding the putative collective members.  Furthermore, counsel for the Parties conferred extensively concerning this information, the merits of the Parties' claims and/or defenses, and other issues relevant to reaching a settlement.

7.     The Parties were able to reach a settlement after continuing discussions in the months following the June 27, 2018, mediation.

8.     Plaintiffs and their counsel have conducted sufficient discovery (formal and informal) and analysis to evaluate the strengths and weaknesses of their respective claims and Wells Fargo's defenses and to recommend this Settlement to the Collective Members and the Court.

## TERMS OF SETTLEMENT

NOW, THEREFORE, in consideration of the mutual covenants, promises and warranties set forth herein, the Parties agree, subject to the Court's approval, as follows:

9.     Definitions of Certain Settlement Terms:

   a.     The "**Settlement Collective**" consists of those individuals who, according to Wells Fargo's personnel and payroll records:  (1) were employed by Wells

-3-

426154

Fargo in the following positions in Virtual Channel Call Centers in the United States (except Boise, Idaho, and Concord, California) at any time from December 4, 2014, through September 1, 2018 (this period shall be referred to as the "**Collective Period**") who worked 40 or more hours in at least one week during the Collective Period:  Phone Banker 1, Phone Banker 2, Phone Banker 3, Phone Banker 4, Phone Banker 5, Phone Banker Premier, Correspondence Rep. 1, Correspondence Rep. 2, Customer Service Rep. 1, Customer Service Rep. 2, Customer Service Rep. 3, Customer Service Rep. 4, Customer Service Rep. 5, E-Mail CSR 1, E-Mail CSR 2, E-Mail CSR 4, Financial Crimes Analyst 1, Financial Crimes Analyst 2, Financial Crimes Spec. 2, Financial Crimes Spec. 3, Financial Crimes Spec. 4, Inbound Sales Specialist (LO) 3, Inbound Sales Specialist 1, Inbound Sales Specialist 2, Inbound Sales Specialist (Virtual) 2, On-Line CSR 1, On-Line CSR 2, On-Line CSR 3, On-Line CSR 4, Outbound Sales Spec. (SAFE) 1, Outbound Sales Spec. (SAFE) 2, Quality Assurance Analyst 1, Quality Assurance Analyst 2, Quality Assurance Analyst 3, Research/Remediation Analyst 1, Research/Remediation Analyst 2, Research/Remediation Associate, Research/Remediation Rep. 3, Technical Service Specialist 1, Technical Service Specialist 2, Technical Service Specialist 3, Technical Service Specialist 4, WFVC Credit Advisory (SAFE), WFVC Relationship Spec. (LO) 2, Work Director 1, Work Director 2; and (2) were employed by Wells Fargo in the following positions at the Tempe, Arizona (for the time period, if any, prior to such individuals relocating to Chandler, Arizona) and/or Chandler, Arizona call center locations during the Collective Period who worked 40 or more hours in at least one week during the Collective Period: Outbound Sales Spec. 1, Outbound Sales Spec. 2, Customer Service Rep. 2, Customer Service Rep. 3, Customer Service Rep. 4, Customer Service Rep. 5, Collector 1, Collector

COLLECTIVE ACTION SETTLEMENT AGREEMENT AND RELEASE

426154

2, Collector 3, Collector Team Lead, Collections Specialist, Fin. Crimes Spec. Call Ctr, Home Preservation Spec. 1, Home Preservation Spec. 2, Home Preservation Spec. 3, Inbound Sales Spec. 1, Inbound Sales Spec. 2.

The Parties acknowledge that this Settlement may require approval by federal regulators, including the Office of the Comptroller of the Currency (OCC), with the concurrence of the Federal Deposit Insurance Corporation (FDIC), pursuant to 12 C.F.R. Part 359 with respect to Collective Members whose employment was or will be terminated for any reason on or after November 18, 2016.  With respect to Collective Members whose employment was or will be terminated on or after November 18, 2016, this Settlement is conditioned on such approval and concurrence, or a determination by the OCC, the FDIC, or both, as necessary, that no such approval is required.

b.      Each individual member of the Settlement Collective shall be referred to as a "**Collective Member**."

c.      "**Participating Collective Members**" means and refers to all Collective Members who cash their settlement checks, consenting to join this Action as a party plaintiff under 29 U.S.C. § 216(b) and expressly releasing in writing any and all claims covered by the Settlement.

d.      "**Collective Counsel**" means and refers to Law Office of James X. Bormes, P.C., Law Office of Thomas M. Ryan, P.C., and Matheson & Matheson, P.L.C.

e.     "**Administrator**" means and refers to the administrator responsible for administering this settlement, Rust Consulting.

10.   Settlement of Action:  This Action and any claims, damages, or causes of action alleged in this Action or that could have been alleged based on the allegations alleged in the Action, including any claims arising from the alleged violation of any provision of federal or state law which were or could have been raised as a part of the Action, shall be settled and compromised as between the Participating Collective Members and Defendant, subject to the terms and conditions set forth in this Agreement and the approval of the United States District Court for the District of Arizona.

11.   Settlement Date:  The Settlement embodied in this Agreement shall become effective upon execution by all Parties, Collective Counsel, counsel for Defendant, approval from the Court, and entry of a joint stipulation of dismissal by the Court in accordance with the terms herein.

12.   Settlement Amount.

a.     In consideration for this Settlement and a release by the Participating Collective Members, as provided herein, Defendant has agreed to pay the maximum amount of $4,958,184.00 (the "**Gross Settlement Amount**") plus the employer's share of any payroll taxes related to the settlement payments and costs of administration.  The Gross Settlement Amount is inclusive of settlement payments to Collective Members, attorneys' fees and costs awarded to Plaintiffs, and service payments to Plaintiffs.  Wells Fargo agrees to increase the Gross Settlement Amount pro rata based on the

-6-

426154

number of weeks worked by the Collective Members to the extent it exceeds 659,798 weeks.

b.    The "**Net Settlement Amount**" is defined as the Gross Settlement Amount, less all of the following: (1) attorneys' fees of up to $1,388,291.52 (the maximum amount of Collective Counsel's fee application, pursuant to Paragraph 17, below); (2) Collective Counsel's reasonable out-of-pocket costs (not to exceed $30,000.00), pursuant to Paragraph 17, below; and (3) the Collective Representatives' service payment awards, pursuant to Paragraph 16, below, not to exceed the sum of $20,000 ($10,000 per Collective Representative).

13.    <u>Settlement Formula and Distribution</u>:  Subject to the conditions of this Agreement, Collective Members shall be entitled to a share (the "**Settlement Share**") of the Net Settlement Amount.  First, each Collective Member will be allocated a minimum amount of $50.00.  The remainder of the Net Settlement Amount is to be divided among all Collective Members, based on their pro-rata percentage of pertinent workweeks (determined by dividing the number of weeks worked by the Collective Member of 40 or more hours in a relevant position at a relevant location during the Collective Period (excluding leaves of absence), by the total number of weeks worked by all Collective Members of 40 or more hours in a relevant position at a relevant location during the Collective Period (excluding leaves of absence)), such that the Collective Members shall receive a dollar amount for each week worked.  The dollar amount per week for relevant weeks worked by Collective Members from December 4, 2014, through December 4, 2015, will be 50% of the dollar amount for the remainder of the weeks.  The valuation of these weeks at 50% will not reduce the Gross Settlement Amount.  In addition, for those Collective Members with a claim greater than the $50.00 minimum, their

426154

Settlement Share will not be $50.00 plus their full per-week amount.  Any weeks covered by the settlement entered into by Wells Fargo in the *Santini v. Wells Fargo Bank, N.A.* class/collective action, Northern District of California, Case No. 16-cv-01992-YGR, are excluded from this Settlement.

14.  <u>Reference to Wells Fargo's Records</u>:  The number of weeks worked by Collective Members of 40 or more hours in a relevant position at a relevant location during the Collective Period will be determined by reference to Wells Fargo's records. Subject to the terms and conditions contained herein, Wells Fargo's records shall be presumptively correct for determining who the Collective Members are, and the number of weeks worked by the Collective Members of 40 or more hours in a relevant position at a relevant location during the Collective Period.

15.  <u>Allocation of Settlement Payments</u>:

a.  One-half (1/2) of all Settlement Share payments to Collective Members shall be considered wages and shall be subject to the withholding of all applicable local, state and federal taxes.  Participating Collective Members will receive from the Administrator a W-2 for the payment and taxes that will be withheld at the rate required by law.  As to all Settlement Share payments that shall be considered wages, Defendant (via the Administrator) will pay all amounts required by law to be paid by the employer to any federal, state or local tax authority.

b.  One-half (1/2) of all Settlement Share payments to Collective Members shall be considered non-wages for the settlement of interest claims and liquidated damages and other penalty claims.  Participating Collective Members will also receive from the Administrator an IRS Form 1099 for these payments, in

accordance with IRS requirements, and will be responsible for correctly characterizing this compensation for tax purposes and to pay any taxes owing.

16. <u>Service Payment Award to Collective Representatives</u>:  Subject to the approval of the Court, Defendant will pay Ten Thousand Dollars ($10,000) to each Collective Representative as a service payment award for his time and efforts as a Collective Representative and taking the risk of paying the costs of Defendant in the event of an unsuccessful outcome, as well as for his assistance to his counsel in prosecuting this Action on behalf of the absent collective members.  This service payment award is in addition to their right to a Settlement Share.  This service payment award shall be paid from the Gross Settlement Amount.  In addition, each Collective Representative will execute a general release of all known and unknown claims, substantially in the form attached hereto as **Exhibit "A,"** in exchange for his service payment award.

a.    The Collective Representatives will each receive an IRS Form 1099 for the service payment award and will be responsible for correctly characterizing this compensation for tax purposes and to pay any taxes owing.

b.    The Collective Representatives shall hold Defendant harmless for any taxes due or owed by the Collective Representatives on any service payment to the Collective Representatives.

c.    The Collective Representatives shall not be entitled to the payment set forth in the paragraph above unless they provide to the Administrator a Social Security number or tax identification number.

17.     Attorneys' Fees and Costs

a.      Collective Counsel shall submit an application for an award of attorneys' fees not to exceed $1,388,291.52, which is 28% of the Gross Settlement Amount.  The amount not to exceed $1,388,291.52 will cover all work performed to date and all work to be performed in connection with the approval by the Court of this Agreement and the final conclusion of this Action.  Defendant agrees not to oppose any fee application that is not in excess of the amount specified in this Paragraph.

b.      Collective Counsel shall submit an application for reimbursement of costs and expenses in an amount not to exceed Thirty Thousand Dollars ($30,000).  The amount not to exceed $30,000 will cover all costs and expenses incurred to date or to be incurred.  This amount shall come from the Gross Settlement Amount.  Defendant agrees not to oppose any cost and expense application that is not in excess of the amount specified in this Paragraph.

18.     Payment Date:   Defendant shall pay to Administrator all amounts awarded and approved by the Court, for payment to the Settlement Collective, the service payment award, and attorneys' fees and costs on the "**Payment Date**," within thirty calendar days of the Court's approval of the Settlement.  Within forty-five calendar days of the Court's approval of the Settlement, the Administrator shall pay the payments to the Collective Members, the service payment awards, and attorneys' fees and costs accordingly.

19.     No Further Payments:  Defendant shall have no obligation to pay or provide any further consideration to any Participating Collective Member by reason of this

-10-

426154

Agreement or because of the foregoing payments, including but not limited to contributions to any 401(k) or other retirement or employee benefit plan, vacation or sick pay, etc.  Any payments made pursuant to this Agreement will not trigger any obligation of Defendant to make any withholding for 401(k) contributions or to make any contributions to any 401(k) or similar such plan.

20.    <u>Certification for Settlement Purposes Only</u>:  As part of this Agreement, the Parties stipulate to the certification of the Settlement Collective for purposes of this Settlement only.  If this Agreement does not become final for any reason, the Parties' willingness to stipulate to certification as part of this Settlement shall have no bearing on, and will not be admissible in connection with, the issue of whether any collective should be certified in these cases or in any subsequent proceeding. The Parties and their counsel will not offer or make reference to this provisional stipulation to certification for purposes of this Settlement in any subsequent proceeding in this Action (except for purposes of having this Agreement approved by the Court) or in any other action.

21.    <u>Parties' Contentions</u>:  In entering into this Agreement, Defendant denies any liability or wrongdoing of any kind associated with the claims alleged in Plaintiffs' Complaints, and further denies that this Action is appropriate for collective treatment.  Defendant contends, among other things, that it has complied with the FLSA and all similar state laws at all times.  In entering into this Agreement, Plaintiffs believe that they have filed a meritorious action and that certification is appropriate.

22.    <u>Settlement Fair, Reasonable, and Adequate</u>:  Plaintiffs and their counsel are of the opinion that the terms set forth in this Agreement are fair, reasonable, and adequate and this Agreement is in the best interest of the Settlement Collective in light of all

-11-

426154

known facts and circumstances, including the risk of significant delay, defenses asserted by Defendant, and numerous potential appellate issues. Defendant and its counsel also agree that this Agreement is fair and in the best interests of the Settlement Collective and each Collective Member.

## THE SETTLEMENT ADMINISTRATOR

23. <u>Selection of Administrator</u>: Subject to the Court's approval, Rust Consulting shall be retained as the Administrator.

24. <u>Collective List</u>: Within fifteen calendar days of the date the Court enters an order approving the Settlement, Defendant shall provide to the Administrator a list containing, for each and every member of the Settlement Collective, the following information: (1) name, (2) last known address, (3) number of weeks worked by each individual of 40 or more hours in a relevant position at a relevant location during the Collective Period (excluding leaves of absence); and (4) Social Security number.

25. <u>Administrator's Duties</u>: The Administrator's duties will include preparing, printing, and mailing the Notice of Settlement to each Collective Member with the Collective Member's Settlement Share; conducting any necessary verifications of Collective Member Social Security numbers; conducting a National Change of Address search on all Collective Members before the initial Notice of Settlement mailing; conducting skip tracing on any Notice of Settlement returned by the U.S. Postal Service as non-deliverable, as needed, and re-mailing the Notice of Settlement to the Collective Member's new address; handling any disputes made by Collective Members; providing the Parties with periodic status reports about the delivery of Notice of Settlement; calculating Settlement Shares; issuing the checks

426154

to effectuate the payments due under the Settlement; issuing the tax reports required under this Settlement; and otherwise administering the Settlement pursuant to this Agreement.

26.    Qualified Settlement Fund:  The Parties agree that the settlement funds will be placed in an account held by the Administrator to effectuate the terms of this Agreement and the orders of the Court.  The Parties agree that the settlement fund (1) shall be established pursuant to an order of the Court prior to the receipt of any monies from Defendant; (2) that it shall be established to resolve and satisfy the contested Claims that have resulted, or may result, from the matters that are the subject of this Action and that are released by this Settlement; and (3) that the fund or account that is established and its assets are segregated and shall be segregated (within a separately established fund or account) from the assets of Defendant and all related other persons. The Administrator shall be responsible for establishing, administering and otherwise operating the settlement fund, including the preparation and filing of federal, state, and local tax returns.  The Administrator shall also be responsible for preparing and issuing all checks to the Collective Members, Plaintiffs, Collective Counsel, the employer's share of any payroll taxes and all checks for claims administration costs and expenses that are approved by the Court and any other payments included in this Agreement and approved by the Court.

27.    Administrator's Findings:  The Administrator shall report, in summary or narrative form, the substance of its findings and, in that regard, the Administrator's approval of claims shall be considered presumptively correct and binding on the Parties, unless the Court rules otherwise.  The Administrator shall be granted reasonable access to Wells Fargo's records to perform its duties.  All disputes relating to the Administrator's ability and need to perform its duties shall be referred to the Court,

-13-

426154

if necessary, which will have continuing jurisdiction over the terms and conditions of this Agreement.  The Administrator submits to the jurisdiction of the Court in connection with its appointment as Administrator.

28.  <u>Administrator's Reports</u>:  The Administrator shall provide weekly reports to counsel concerning receipt of returned mail, number of cashed checks, dollar amount of cashed checks, and any disputes received from Collective Members. These reports shall not contain names or identifying information of Collective Members.

## ADMINISTRATION OF SETTLEMENT

29.  <u>Notice of Settlement</u>:  Within forty-five days of the Court's approval of the Settlement, the Notice of Settlement, in the form attached hereto as **Exhibit** "**B**", and approved by the Court, shall be sent by the Administrator to each Collective Member with the Collective Member's Settlement Share.  The Notice of Settlement and Settlement Share shall be sent by first class mail to each Collective Member's current or last known address on file at Defendant, following an updated review of the National Change of Address Registry by the Administrator.

a.  <u>Returned Notices</u>:  All Notice of Settlement mailing packets returned from this mailing with forwarding addresses affixed thereto will be utilized by the Administrator to locate the Collective Members through reasonable and customary skip tracing efforts used in the administration of such settlements.

b.   It will be presumed that if an envelope has not been returned within thirty (30) days of the mailing that the Collective Member received the notice.

-14-

30.  <u>Administrator's Responsibility for Payment</u>: The Administrator is responsible for having the payments to each Collective Member issued, calculating and withholding all required state and federal taxes, and performing the tax reporting on such payments.  Upon completion of its review, the Administrator shall provide the Parties with a report listing the amount of payments made to each Collective Member.  This report will not contain names or identifying information of Collective Members.  Settlement checks will be valid for ninety (90) days.  At the end of that 90-day period, settlement checks will be void.  The amounts of any voided settlement checks shall revert to Wells Fargo.  After the void date, the Administrator will provide to the Parties and the Court a list of all Participating Collective Members.

All settlement checks issued to Collective Members shall contain, on the back of the check, the following language, which shall be the opt-in consent required by the FLSA:

"VOID IF ALTERED OR IF NOT CASHED BEFORE [DATE]

POSITIVE I.D. REQUIRED

SIGNED ENDORSEMENT BY NAMED PAYEE IS REQUIRED

I consent to join the lawsuit *Kenneth Harris, Jr, et al. v. Wells Fargo Bank, N.A.*, Case No. 2:17-cv-01146 (USDC, D. Ariz.).  By signing below, I agree to release and not sue Wells Fargo for all of my claims that are covered by the Settlement, including under FLSA and applicable state law, as described in the collective notice I received."

COLLECTIVE ACTION SETTLEMENT AGREEMENT AND RELEASE

426154

Any Participating Collective Member who cashes the check will be considered to have "opted-in" to the Settlement.  If a Participating Collective Member attempts to alter this language on the back of the check, any such alterations will be null and void and have no legal effect.  The release language will be effective and controlling.

31.  Handling of Disputes:  Collective Member disputes may arise from the following information:  (1) job positions held during the Collective Period; (2) the time periods in which various job positions were held during the Collective Period; and/or (3) the number of weeks worked of 40 or more hours in a relevant position at a relevant location during the Collective Period.

    a.  If a Collective Member disputes the accuracy of Wells Fargo's records or Defendant contends a claim is invalid, counsel for the Parties will make a good faith effort to resolve the disagreement.  If the dispute is not thereby resolved, it will be referred to the Administrator, who will talk to such persons and representatives from Defendant telephonically, and issue a non-appealable, final decision as to the total amount due, if any, to the Collective Member.  The Collective Member will indicate acceptance of this determination by cashing his or her Settlement Share.

    b.  The submission of any dispute to the Administrator must be made within forty-five (45) days after the Notices of Settlement and Settlement Shares are sent to the Collective Members.

## RELEASE OF CLAIMS BY THE SETTLEMENT COLLECTIVE

32.   Release of Claims:  Upon the Settlement Date, and except as to such rights or claims as may be created by this Agreement, each Participating Collective Member (opt in plaintiff) fully releases and discharges Defendant, its present, former, and future parents, subsidiaries, affiliates, predecessors, successors and assigns, and each of their respective past and present members, shareholders, directors, officers, employees, agents, servants, registered representatives, insurers and attorneys (collectively hereafter, the "**Released Parties**") from any and all claims, debts, liabilities, demands, obligations, guarantees, actions, or causes of action of whatever kind or nature, whether known or unknown, from the beginning of time through September 1, 2018, that were or could have been alleged based on the claims, facts and/or allegations contained in Plaintiffs' Complaints (hereinafter, the "**Released Claims**"), including those arising out of or related to all claims based on failure to pay minimum wages and failure to pay overtime wages including all claims of any kind for minimum wages, regular wages, overtime wages, liquidated damages, statutory penalties, civil penalties, restitution, interest, injunctive relief, punitive damages, other damages, costs, expenses and attorneys' fees arising from the alleged violation of any provision of common law or statutory law which were or could have been raised as part of Plaintiffs' claims including but not limited to claims under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, et seq., as well as applicable state minimum wage and overtime laws governing the employment of persons in any state where a Participating Collective Member performed work for Defendant that are or could be based on or related to the same matters alleged in Plaintiffs' Complaints.

    a.   In order to achieve a full and complete release of the Released Parties, the named Plaintiffs and each Participating Collective Member acknowledges

-17-

426154

that the release is also intended to include in its effect all such Released Claims whether or not the Plaintiffs and each Participating Collective Member knows or suspects them to exist.

b.   With respect to the Released Claims, the named Plaintiffs and Participating Collective Members may hereafter discover facts or legal arguments in addition to or different from those they now know or currently believe to be true with respect to the claims and causes of action in this case which are the subject matter of the Released Claims.  Regardless, the discovery of new facts or legal arguments shall in no way limit the scope or definition of the Released Claims and by virtue of this Agreement, Plaintiffs and the Participating Collective Members shall be deemed to have, and by operation of the final judgment approved by the Court shall have, fully, finally, and forever settled and released all of the Released Claims as defined above.

33.   <u>Subsequent Actions</u>:  If any Participating Collective Member initiates a new lawsuit against Defendant based on any claim released under this Agreement, and the Court invalidates the release, any recovery by the Participating Collective Member shall be offset by the amount, if any, paid to the Collective Member in connection with this Settlement.  The language in this Paragraph 33 shall be included in the Notice of Settlement.

## DUTIES OF THE PARTIES PRIOR TO APPROVAL

34.   The Parties shall promptly submit this Agreement to the United States District Court for the District of Arizona in support of the motion for approval and determination by the Court as to its fairness, adequacy, and reasonableness. Collective Counsel shall submit the papers to Wells Fargo's Counsel for their

-18-

426154

review prior to the filing of such papers with the Court.

## DUTIES OF THE PARTIES FOLLOWING APPROVAL

35.     Within sixty days of the Court's approval of the Settlement, the Parties will file a joint stipulation dismissing the Action with prejudice with respect to the Participating Collective Members.  The Court will retain jurisdiction such that the Parties can file a list of Participating Collective Members after the void date on the Settlement Share checks.  The Parties and the Participating Collective Members waive their right to seek any form of appellate review over any order or judgment that is consistent with the terms of this Agreement.

## VOIDING THE AGREEMENT

36.     If the Court disapproves of or refuses to enforce any of the material conditions set forth in this Settlement, this Settlement shall, at the option of Defendant, be void, and of no further force and effect and shall not be used or admissible in any subsequent proceeding.  Defendant may exercise its option to void this Settlement as provided in this paragraph by giving notice, in writing, to Collective Counsel and to the Court within two (2) weeks of the entry of the Court's order disapproving or refusing to enforce any of the material conditions of the Settlement.

37.     If the conditions of the Settlement set forth herein are not satisfied, or if Defendant voids the Settlement under Paragraph 36 above, or if the Payment Date does not occur, or, if one or more of the material terms of the Agreement is not approved or is materially modified or reversed, with the exception of the Court's reduction of the amounts of Attorneys' Fees and Costs, Collective Representatives' Service

-19-

426154

Payment Awards, or Administrator's fee, then this Agreement shall be cancelled, terminated, and shall have no force or effect, unless the Parties agree otherwise.  If the Settlement is not finally approved, or if this Settlement is terminated, revoked or cancelled pursuant to its terms, the Parties to this Settlement shall be deemed to have reverted to their respective status as of the date and time immediately prior to the execution of this Agreement.

## PARTIES' AUTHORITY

38.    The signatories hereby represent that they are fully authorized to enter into this Agreement and bind the Parties hereto to the terms and conditions hereof.

## MUTUAL FULL COOPERATION

39.    The Parties shall fully cooperate with each other to accomplish the terms of this Agreement, including execution of such documents and to take such other action as may reasonably be necessary to implement the terms of this Agreement and to secure the Court's approval of this Agreement.

## NO PRIOR ASSIGNMENTS

40.    The Collective Representatives hereto represent, covenant, and warrant that they have not directly or indirectly assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action, or rights herein released and discharged except as set forth herein.

426154

**NO ADMISSION**

41.     Nothing contained herein, including the consummation of this Agreement, is to be construed or deemed an admission of liability, culpability, negligence, or wrongdoing on the part of Defendant.  Each of the Parties hereto has entered into this Agreement with the intention to avoid further disputes and litigation settled herein with the attendant inconvenience, expenses, and uncertainties.  This Agreement is a settlement document and shall, pursuant to Federal Rule of Evidence 408 and any similar state laws, be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce this Agreement.

**TAXES**

42.     Neither Collective Counsel nor counsel for Defendant intend anything contained herein to constitute legal advice regarding the taxability of any amount paid hereunder, nor shall it be relied upon as such.  The tax issues for each Collective Member may be unique, and each Collective Member is advised to obtain tax advice from his or her own tax advisor with respect to any payments resulting from this Agreement.

43.     It shall be the responsibility of the Administrator or its designee to timely and properly withhold from individual Settlement Shares payable to Collective Members all applicable federal, state and local income and employment taxes and to prepare and deliver the necessary tax documentation for signature by all necessary Parties and, thereafter, to cause the appropriate deposits of withholding taxes and informational and other tax return filing to occur.  It shall be the responsibility of the Administrator to pursue tax refunds on any uncashed checks,

426154

and to remit such payments accordingly.  Payments to Participating Collective Members and to Collective Counsel pursuant to this Stipulation shall be reported on IRS Forms W-2 or 1099, and provided by the Administrator to the respective Collective Members, Collective Counsel and all applicable governmental authorities as required by law.

**NOTICES**

44.   Unless otherwise specifically provided herein, all notices, demands or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing by United States certified mail with return receipt requested, addressed as follows:

To Plaintiffs and Settlement Collective:

James X. Bormes, Esq.
Law Office of James X. Bormes, P.C.
8 South Michigan Avenue, Suite 2600
Chicago, Illinois 60603

Thomas M. Ryan, Esq.
Law Office of Thomas M. Ryan, P.C.
35 East Wacker Drive, Suite 650
Chicago, Illinois 60601

Michelle R. Matheson, Esq.
Matheson & Matheson, P.L.C.
15300 North 90th Street, Suite 550
Scottsdale, Arizona 85260

COLLECTIVE ACTION SETTLEMENT AGREEMENT AND RELEASE

426154

To Defendant's Counsel:

Glenn L. Briggs, Esq.
Theresa Kading, Esq.
Kading Briggs LLP
100 Spectrum Center Drive, Suite 800
Irvine, California 92618

## CONSTRUCTION

45.   The terms and conditions of this Agreement are the result of lengthy, intensive arms-length negotiations between the Parties, and this Agreement shall not be construed in favor of or against any party by reason of the extent to which any party or his, her, or its counsel participated in its drafting.

## CAPTIONS AND INTERPRETATIONS

46.   Paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Agreement or any provision hereof.  Each term of this Agreement is contractual and not merely a recital.

## MODIFICATION

47.   This Agreement may not be changed, altered, or modified, except in writing and signed by the Parties hereto.  This Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties hereto.

426154

## INTEGRATION CLAUSE

48. This Agreement contains the entire agreement between the Parties relating to the Settlement and transaction contemplated hereby, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a party or such party's legal counsel, are merged herein. No rights hereunder may be waived except in writing.

## BINDING ON ASSIGNS

49. This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective spouses, heirs, trustees, and executors, administrators, successors, and assigns, including Defendant and the Released Parties.

## COLLECTIVE MEMBER SIGNATORIES

50. Because the members of the collective are so numerous, it is impossible or impractical to have each member of the collective execute this Agreement.  The Notice of Settlement, Exhibit "B" hereto, and other forms of notice described herein will advise all Collective Members of the binding nature of the release and such shall have the same force and effect, to the extent permitted by law, as if this Agreement were executed by each Participating Collective Member.

## CORPORATE SIGNATORIES

51. Any person executing this Agreement or any such related document on behalf of a corporate signatory hereby warrants and promises for the benefit of all Parties

-24-

426154

hereto that such person has been duly authorized by such corporation to execute this Agreement or any such related document.

## COUNTERPARTS

52. This Agreement may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Agreement, which shall be binding upon and effective as to all Parties as set forth herein.  Copies and facsimile transmissions of signatures shall be considered the same as an original signature.

## PUBLIC COMMENT

53. Plaintiffs and their counsel will not, unless required by law, issue any press releases or have any communications to the press concerning this litigation, or the terms of this Agreement, and/or the business practices of Defendant.  The Collective Representatives may only respond to inquiries about this lawsuit or the Agreement from Collective Members, and only until approval of this Agreement. Otherwise, the Collective Representatives shall not discuss this lawsuit or this Agreement except to say that the matter has been resolved, except for i) communications with the Collective Representative's spouse or domestic/civil union partner, attorney and tax advisor, or ii) pursuant to a lawful subpoena or as otherwise permitted by law.  Collective Counsel shall not include in any mass mailing, website, or other public communication, a reference to this litigation, this Agreement, and/or the business practices of Defendant; except that this provision shall not apply to or otherwise limit communications with Collective Members up to the date of approval of this Agreement, so long as the subject matter of such

communications is limited to this Action and Settlement.  Nothing in this provision shall affect the ability of Collective Counsel or the Administrator to carry out their duties consistent with and as required by any other provision herein.

Nothing contained in this section shall limit or restrict Collective Counsel's ability to disclose the Settlement to a Court with jurisdiction over future class/collective litigation in support of their request to be appointed class/collective counsel.

DATED: _____, 2018   LAW OFFICE OF JAMES X. BORMES, P.C.

By:_____
James X. Bormes, Esq.
Attorneys for Plaintiffs

DATED: _____, 2018   LAW OFFICE OF THOMAS M. RYAN, P.C.

By:_____
Thomas M. Ryan, Esq.
Attorneys for Plaintiffs

DATED: _____, 2018   MATHESON & MATHESON, P.L.C.

By:_____
Michelle R. Matheson, Esq.
Attorneys for Plaintiffs

DATED: _____, 2018   KENNETH HARRIS, JR.

By:_____
Kenneth Harris, Jr., Collective Representative

DATED: _____, 2018   JORDAN KERNESS

By:_____
Jordan Kerness, Collective Representative

426154

-26-

COLLECTIVE ACTION SETTLEMENT AGREEMENT AND RELEASE

1

2

3   DATED: _____, 2018   WELLS FARGO BANK, N.A.

4
                                By:_____
5                               Its: _____

6   DATED: _____, 2018   KADING BRIGGS LLP

7
                                By:_____
8                                   Theresa Kading
                                    Attorneys for Defendant
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

426154

-27-

COLLECTIVE ACTION SETTLEMENT AGREEMENT AND RELEASE