James X. Bormes (*pro hac vice*)
Catherine P. Sons (*pro hac vice*)
LAW OFFICE OF JAMES X. BORMES, P.C.
Illinois State Bar No. 620268
8 South Michigan Avenue
Suite 2600
Chicago, Illinois 60603
(312) 201-0575
jxbormes@bormeslaw.com
cpsons@bormeslaw.com

**LEAD ATTORNEY IN CHARGE FOR
PLAINTIFF AND COLLECTIVE MEMBERS**

Thomas M. Ryan (*pro hac vice*)
LAW OFFICE OF THOMAS M. RYAN, P.C.
Illinois State Bar No. 6273422
35 East Wacker Drive
Suite 650
Chicago, Illinois 60601
(312) 726-3400
tom@tomryanlaw.com

LOCAL COUNSEL:
Michelle R. Matheson #019568
MATHESON & MATHESON, P.L.C.
15300 North 90th Street
Suite 550
Scottsdale, Arizona 85260
(480) 889-8951
mmatheson@mathesonlegal.com
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kenneth Harris and Jordan Kerness, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>Wells Fargo Bank, N.A.,<br><br>        Defendant. | No.: 2:17-cv-01146-PHX-DJH<br><br>*consolidated with*<br><br>No.: 2:17-cv-02516-PHX-DJH<br><br>**PLAINTIFFS' UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS AND EXPENSES, AND AWARD OF COLLECTIVE REPRESENTATIVE SERVICE PAYMENTS; MEMORANDUM IN SUPPORT OF MOTION** |

i

# TABLE OF CONTENTS

I.      Introduction ........................................................................................................ 1

II.     Background ........................................................................................................ 1

        A.      Collective Counsel Carefully Investigated Collective Members'
                Claims Before Beginning Settlement Negotiations .......................... 2

        B.      The Settlement is Highly Beneficial to 30,870 Collective Members  2

        C.      Collective Counsel Have Devoted Substantial Time and Resources
                To This Litigation.............................................................................. 3

III.    Argument ........................................................................................................... 3

        A.      The Equitable Fund Doctrine Requires That Counsel Be
                Compensated From the Fund .............................................................. 5

        B.      The Fee Award Should Be Calculated As A Percentage Of The
                Common Fund...................................................................................... 5

        C.      Given the Result and the Totality of the Circumstances,
                the Requested Fee Award is Within The Reasonable Range
                Under Ninth Circuit Case Law............................................................ 7

        D.      The Requested Fee Award is Reasonable Under
                A Lodestar Crosscheck....................................................................... 10

                1. Time and Labor Required ........................................................... 12

                2. The Novelty and Difficulty of the Questions Involved............... 12

                3. The Requisite Legal Skill Required ............................................ 13

                4. The Preclusion of Other Employment......................................... 13

                5. The Customary Fee .................................................................... 13

                6. Whether the Fee is Contingent ................................................... 14

                7. Amount of Time Spent for Results ............................................. 14

8. Results Obtained ........................................................................ 14

9. Experience, Reputation, and Ability of the Attorneys ................ 15

10. Undesirability of the Case ........................................................ 15

11. Nature and Length of Relationship with the Client .................. 15

12. Awards in Similar Cases .......................................................... 15

E.   Collective Counsel Are Entitled to Recover Their Out-of-Pocket
     Expenses, Which Are Reasonable and Have Inured to the
     Benefit of the Collective .................................................... 16

F.   The Requested Collective Representative Service Awards Are
     Reasonable ......................................................................... 16

IV.   Conclusion ................................................................................... 18

1

## TABLE OF AUTHORITIES

2

**Page**

3

### CASES

4

*Agofonova v. Nobu Corp.,*
   No. 07-6926 (S.D.N.Y. Feb. 6, 2009) ........................................................................ 11

5

*Antonopulos v. N. Am. Thoroughbreds, Inc.,*
   No. 87-0979G(CM), 1991 WL 427893 (S.D. Cal. May 6, 1991) ................................. 8

6

7

*Barbosa v Cargill Meat Solutions Corp.,*
   297 F.R.D. 431, 450 (E.D. Cal. July 2, 2013) ........................................................... 4

8

*Bautista v. Harvest Mgmt. Sub LLC,*
   No 12-cv-10004 (C.D. Cal. July 14, 2014) ............................................................... 4

9

10

*Blum v. Stenson,*
   465 U.S. 886 (1984) ............................................................................... 4, 5, 10

11

*Boeing Co. v. Van Gemert,*
   444 U.S. 472 (1980) ....................................................................................... 5

12

13

*Chemical Bank v. Jaffe & Schlesigner, P.A.,*
   19 F.3d 1306 (9th Cir. 1994) ........................................................................... 3

14

*Cicero v. DirecTV, Inc.*
   No. 07-cv-1182, 2010 WL 2991486 (C.D. Cal. July 27, 2010) ...................... 4, 8, 17

15

16

*Cook v. Niedert,*
   142 F.3d 1004 (7th Cir. 1998) ......................................................................... 17

17

*Craft v. County of San Bernardino,*
   624 F.Supp.2d 1113, 1127 (C.D. Cal. 2008) ...................................................... 4

18

19

*Doty v. Costco Wholesale Corp.,*
   No. 05-3241 (C.D. Cal. May 14, 2007) ..................................................... 11, 17

20

*Glass v. UBS Financial Services, Inc.,* Case No. C-06-4068 MMC, 2007 WL 221862
   (N.D. Cal. Jan 26, 2007) ............................................................................... 17

21

22

*Hainey v. Parrott,*
   No. 02-733 2007 WL 3308027 (S.D. Ohio Nov. 6, 2007) ................................... 17

23

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998) ........................................................................ 11

24

25

*Harris v. Marhoefer,*
   24 F.3d 16 (9th Cir. 1994) ............................................................................. 16

26

*In re Activision Sec. Litig.,*
   723 F. Supp. 1373 (N.D. Cal. 1989) ............................................................. 6, 7

27

28

iv

1
2
3

# TABLE OF AUTHORITIES

## (continued)

**Page**

*In re Cenco Inc. Securities Litigation,*
   *519 F.Supp. 322 (N.D. Ill. 1981)* ............................................................. 12, 15

*In re Janney Montgomery Scott LLC Financial Consultant Litig.,*
   *No. 06-3202, 2009 U.S. Dist. LEXIS 60790 (E.D. Pa. July 16, 2009)* ...................... 17

*In re M.D.C. Holdings Sec. Litig.,*
   *No. CV89-0090 E (M), 1990 WL 454747 (S.D. Cal. Aug. 30, 1990)* ........................... 8

*In re Mego Fin. Corp. Sec. Litig.,*
   *213 F.3d 454 (9th Cir. 2000)* ....................................................................... 7

*In re Omnivision Tech., Inc.,*
   *No. C-04-2297 SC, 2007 WL 4293467 (N.D. Cal. Dec. 6, 2007)* ................................ 4

*In re Pacific Enterprises Sec. Litig.,*
   *47 F.3d 373 (9th Cir. 1995)* ........................................................................ 7

*In re Public Serv. Co. of New Mexico,*
   *No. 91-0536M, 1992 WL 278452 (S.D. Cal. July 28, 1992)* ...................................... 8

*In re the PMI Group, Inc. Securities Litig.,*
   *No. 08-1405 SI (N.D. Cal. Dec. 16, 2010)* ...................................................... 11

*In re Xcel Energy, Inc., Securities, Derivative & "'ERISA" Litig.,*
   *364 F.. Supp. 2d 980 (D. Minn. 2005)* ...................................................... 8, 11

*Kerr v. Screen Extras Guild Inc.,*
   *526 F.2d 67 (9th Cir. 1975)* .................................................................. 10, 11

*Parks v. Eastwood Ins. Servs., Inc.,*
   *240 Fed. Appx. 172 (9th Cir. 2007)* .......................................................... 13

*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268
 *(9th Cir. 1989)*………………………………………………………………………………6, 7

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,*
   *478 U.S. 546 (1989)* ............................................................................... 10

*Rabin v. Concord Assets Group, Inc.,*
   *No. 89 Civ. 6130 (LBS), 1991 WL 275757 (S.D.N.Y. 1991)* ................................... 11

*Roberts v. Texaco, Inc.,*
   *979 F. Supp. 185 (S.D.N.Y. 1997)* ............................................................. 15

*Sherin v. Smith,*
   *Fed.Sec.L.Rep. (CCH) P 93,582 (E.D. Pa. October 23, 1987)* ............................. 14

*Silberblatt v. Morgan Stanley,*
   *524 F. Supp. 2d 425 (S.D.N.Y. 2007)* ......................................................... 18

v

1

# TABLE OF AUTHORITIES

2

**(continued)**

3

**Page**

4

5

*Six Mexican Workers v. Arizona Citrus Growers,*

6

 *904 F.2d 1301 (9th Cir. Cal. 1990)* ............................................................... 5, 7

*Smith v. CRST Van Expedited, Inc.,*

7

 *No. 10-cv-1116, 2013 WL 163293 (S.D. Cal. Jan. 14, 2013)*............................4

8

*State of Fla. v. Dunne,*

9

 *915 F.2d 542 (9th Cir. 1990)* ..................................................................... 6, 11

*Staton v. Boeing Co.,*

10

 *327 F.3d 938 (9th Cir. 2003)* ........................................................... 5, 16, 17

11

*Steiner v. Am. Broad. Co.*

12

 *248 Fed. Appx. 780 (9th Cir. 2007)* ............................................... 11, 12, 13

13

*Stevens v. Safeway, Inc.,*

 *No. CV 05-01988, 2009 U.S. Dist. LEXIS 17119 (C.D. Cal. Feb. 25, 2008)*.............. 17

14

*Sutton v. Bernard,*

15

 *504 F.3d 688 (7th Cir. 2007)* ...................................................................... 6

16

*Swedish Hosp. Corp. v. Shalala,*

 *1 F.3d 1261 (D.C. Cir. 1993)* ...................................................................... 6

17

*Teeter v. NCR Corp.,*

18

 *No. 08-297 (C.D. Cal. Aug. 6, 2009)* ......................................................... 11

19

*The Music Force, LLC v. Viacom, Inc.,*

 *No. 04-8239 (C.D. Cal. Aug. 8, 2007)* ....................................................... 11

20

*Van Vranken v. Atl. Richfield Co.,*

21

 *901 F. Supp. 294 (N.D. Cal. 1995)* ........................................................... 17

22

*Vasquez v. Coast Valley Roofing, Inc.,*

 *266 F.R.D. 482, 491 (E.D. Cal. 2010)*............................................................4

23

*Vincent v. Hughes Air West., Inc.,*

24

 *557 F.2d 759 (9th Cir. 1977)* ...................................................................... 3

25

*Vizcaino v. Microsoft Corp.,*

*290 F.3d 1043 (9th Cir. 2002)* ................................................................ *passim*

26

*Wade v. Kroger Co.,*

27

*No. 3:01-CV-699, 2008 WL 4999171 (W.D. Ky. Nov. 20, 2008)*...................... 17

28

*Wright v. Stern,*

*553 F. Supp. 2d 337 (S.D.N.Y. 2008)* .......................................................... 17

vi

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**

**(continued)**

**Page**

**TREATISES**

Newberg, *Attorney Fee Awards*, § 14.03 (1987)............................................................. 10

**MOTION & MEMORANDUM OF LAW**

**I.     INTRODUCTION**

Having secured this $4,958,184.00 settlement on behalf of Collective Members across the country, Collective Counsel seek an attorneys' fee award of $1,388,291.50. This amount represents 28 percent of the settlement fund.  As set forth in detail below, this is within the reasonable range of fee awards in the Ninth Circuit in such circumstances. *See, e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002)(finding 28% fee award to be reasonable under the percentage method).

Collective Counsel have obtained an excellent result for the Collective Members. 29,366 individuals are eligible for payments of up to approximately $864.00. Collective Counsel will continue to perform work on this case for the benefit of the Collective – assisting Collective Members during the notice period, assisting the Administrator in disseminating payments to Collective Members, and responding to further inquiries from Collective Members.  Collective Counsel's lodestar and costs will continue to increase significantly during 2019 and likely beyond.

Collective Counsel also seek reimbursement of litigation expenses of $21,919.98. As set forth below, the incurred costs are reasonable and proper and were all incurred in connection with the prosecution and mediation of the consolidated cases.  (Ex. 1, Ryan Decl., ¶ 28; Ex. 2, Bormes Decl., ¶ 32). Although Collective Counsel will continue to incur costs for the benefit of the Collective (*e.g.*, calls and communications with Collective Members), Collective Counsel do not seek reimbursement for them because those costs have not yet been incurred.

Finally, to recognize the time and effort that the two named Plaintiffs expended for the benefit of the Collective Members, the results they made possible for the Collective, and the risks they accepted by initiating and leading the litigation, Plaintiffs request a service payment of $10,000 each to lead Plaintiffs Kenneth Harris, Jr. and Jordan Kerness.

A proposed Order approving this Motion is attached hereto as Exhibit 3.

**II.     BACKGROUND**

1

**A.      Collective Counsel Carefully Investigated Collective Members' Claims Before Reaching a Settlement.**

The law firms of Law Office of James X. Bormes, P.C., Law Office of Thomas M. Ryan, P.C., and Matheson and Matheson, P.L.C. are counsel for Plaintiffs in this case. On April 18, 2017, on behalf of Plaintiff Kenneth Harris, Jr., Collective Counsel filed a complaint, alleging that Defendant failed to pay overtime to phone representatives who worked at the call center in Chandler, Arizona.  (ECF No. 1, Compl, ¶¶ 3-9).  Thereafter, Plaintiff Harris filed an Amended Complaint seeking recovery of unpaid overtime for phone representatives at the call centers in Tempe, Arizona and Chandler, Arizona.  On July 27, 2017, Collective Counsel filed a new case, *Kerness v. Wells Fargo*, on behalf of phone bankers who worked at the Rose Garden Lane call center in Phoenix, Arizona.

After the filing of the Complaints in both cases, the Parties engaged in written and oral discovery, including answering interrogatories, responding to document requests, producing documents, taking depositions of supervisors, engaging in a discovery dispute hearing, and conducting many detailed meet and confers regarding disputed issues.

After conducting discovery, Collective Counsel were thoroughly familiar with the strengths and weaknesses of the consolidated cases.  The parties began potential mediation discussions which lasted over four months during which time they negotiated a mediation and tolling agreement.  Prior to the mediation, the Parties exchanged payroll and workweek information for approximately 30,000 current and former phone representatives from call centers across the country.  While the parties did not reach a settlement at the June 27, 2018 mediation, they continued negotiations and exchanged drafts of various key terms of potential settlement during the next several months. All of these activities allowed Collective Counsel to carefully investigate the claims before the reaching the Settlement.

**B.      The Settlement Is Highly Beneficial To The 29,366 Collective Members.**

Each Collective Member is eligible to receive a share of the $4,958.184.00 settlement fund based upon the simple formula described in the Settlement Agreement,

carefully designed to fairly compensate Collective Members. (Settlement Agreement, ¶ 13, p7). Under the proposed settlement, the average distribution per person will be approximately $120.00 and the maximum distribution per person is estimated to be in excess of $850.00. A Collective Member who does not cash their settlement check the settlement does not release any claims against Defendant.

In addition to the payments available to Collective Members, there are additional aspects of this settlement that make it exceptionally favorable to Collective Members. First, settlement checks will be mailed with the notice so the mechanism for the Collective Members to receive their money could not be easier. Second, Defendant has agreed to pay for the administration costs of this settlement separate from in addition to the settlement fund of nearly $5,000,000 Defendant has agreed to pay. Likewise, Defendant has agreed to pay its payroll tax obligations separate from and in addition to the settlement fund. Thus, unlike many collective action settlements, the cost of administration and the employer's payroll tax obligations will not reduce the fund available to Collective Members.

### C. Collective Counsel Have Devoted Substantial Time And Resources To This Litigation.

As of December 20, 2018, Collective Counsel have devoted 1,630 hours to the prosecution of this action, with a lodestar value of $698,925.00. (Ex. 1, ¶ 26-27, 29; Ex. 2, ¶ 28-31). Also, Collective Counsel paid $21,919.98 in out-of-pocket costs. (Ex. 1, ¶ 28; Ex. 2, ¶ 32). As set forth below, Collective Counsel expended this effort and this money without any guarantee of recovery. (Ex. 1, ¶ 19-21; Ex. 2, ¶ 20-22). In prosecuting the Collective Members' claims, Collective Counsel gave up the opportunity to perform other work during this time period. *Id.*

### III. ARGUMENT

"[A] private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air West., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977); *Chemical Bank v. Jaffe & Schlesinger, P.A.*, 19 F.3d 1306,

1308 (9th Cir. 1994). The traditional method for calculating a fee award in common fund cases is to award counsel a percentage of the total fund. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984).

"The Ninth Circuit has held that 25% of the gross settlement amount is the benchmark for attorneys' fees awarded under the percentage method, with 20% to 30% as the usual range in common fund cases where the recovery is between $50 and 200 million…[and] with 30-50% commonly being awarded in cases in which the common fund is relatively small.  Indeed, California cases in which the common fund is small, tend to award attorneys' fees above the 25% benchmark." *Cicero v. DirectTV, Inc*. No. 07-cv-1182, 2010 WL 2991486 (C.D. Cal. July 27, 2010), citing *Craft v. County of San Bernardino*, 624 F.Supp.2d 1113, 1127 (C.D. Cal. 2008)(holding attorneys' fees for large fund cases are typically 25% or under while cases below $10 million are often more than the 25% benchmark); *Vizcaino*, 290 F.3d at 1047 (finding same); *In re Omnivision Techs., Inc.*, No. C-04-2297 SC, 2007 WL 4293467, at *10 (N.D. Cal. Dec. 6, 2007) ("[I]n most common fund cases, the award exceeds that [25%] benchmark").  Under the percentage method, courts in the Ninth Circuit have "recognized that most fee awards based on either the lodestar or percentage calculation are 33 percent and [have] endorsed the federal benchmark of 25 percent." *Bautista v. Harvest Mgmt. Sub LLC*, No 12-cv-10004 (C.D. Cal. July 14, 2014), *quoting Smith v. CRST Van Expedited, Inc.*, No. 10-cv-1116, 2013 WL 163293, *5 (S.D. Cal. Jan. 14, 2013). The actual percentage varies depending on the facts of each case, but in "most common fund cases, the award exceeds that benchmark." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010) (internal quotation marks omitted); *Barbosa v Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 450 (E.D. Cal. July 2, 2013)(approving 33% of $1,290,000 settlement fund in unpaid wage class action). As set forth below, the requested award of $1,388,291.50 represents 28% of the settlement fund which is within the range of reasonableness under the facts of this settlement and Ninth Circuit case law.[1]

---

[1] Plaintiffs estimate the cost of administration may be about $150,000 and Defendant's payroll obligations could be as much as $200,000.  Those expenses are often included in the gross

4

**A.      The Equitable Common Fund Doctrine Requires That Counsel Be Compensated From The Fund.**

For well over a century, federal and state courts have recognized that when counsel's efforts result in the creation of a common fund that benefits plaintiffs and unnamed class or collective members, counsel have an equitable right to be compensated from that fund as a whole for their successful efforts in creating it. *See, e.g., Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (observing that the United States Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund…is entitled to a reasonable attorney's fee from the fund as a whole"); *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003).

The common fund doctrine rests on the understanding that attorneys should normally be paid by their clients. *Boeing*, 444 U.S. at 478. Where the attorneys' unnamed Collective Member clients have no express retainer agreement, those who benefit from the fund without contributing to it would be unjustly enriched if attorneys' fees were not paid out of the common fund. *Id.*

This litigation has resulted in a settlement fund of $4,958,184.00 to be distributed to the Collective Members, none of whom have paid Collective Counsel fees for their efforts during the litigation. Equity requires them to pay a reasonable fee, based on what the market would traditionally require, no less than if they had hired private counsel to litigate their cases individually. *Id.* at 479-481.

**B.      The Fee Award Should Be Calculated As A Percentage Of The Common Fund.**

The fairest way – and the way that best promotes efficiency in litigation – to calculate a reasonable fee when contingency fee litigation has produced a common fund is by awarding Collective Counsel a percentage of the total fund. *See, e.g., Blum*, 465 U.S. at 900 n.16; *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311

---

settlement fund.  Had that been the case here, Plaintiffs' attorney's fees would be about 26% of the fund.

(9th Cir. Cal. 1990) (common fund fee is generally "calculated as a percentage of the recovery"); *Paul, Johnson, Alston & Hunt v. Graulty,* 886 F.2d 268, 272 (9th Cir. 1989).

The percentage of the fund method is appropriate for several reasons. The percentage method comports with the legal marketplace, where plaintiffs' counsel's success is frequently measured in terms of the results they have achieved. *See Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269 (D.C. Cir. 1993) (in common fund cases, "the monetary amount of the victory is often the true measure of [counsel's] success"). By assessing the amount of the fee in terms of the amount of the benefit conferred on the class, the percentage method "more accurately reflects the economics of litigation practice" which, "given the uncertainties and hazards of litigation, must necessarily be result-oriented." *Id.* (internal quotations and citations omitted).

In general, people who lack the resources to hire counsel by the hour typically secure legal representation by agreeing to payment of the fee in the form of a percentage of any future recovery.  The percentage of the fund approach mirrors this aspect of the market and, accordingly, reflects the fee that would have been negotiated by the Collective Members in advance, had such negotiations been feasible, given the prospective uncertainties and anticipated risks and burdens of the litigation. *See, e.g., Paul, Johnson, Alston & Hunt*, 886 F.2d at 271; *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007).

This percentage approach to common fund fee awards has other benefits and advantages as well. Notably, it aligns the incentives of the collective and their counsel and encourages counsel to spend their time efficiently and to focus on maximizing the size of the collective's recovery, rather than their own lodestar hours. *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1375 (N.D. Cal. 1989); *State of Fla. v. Dunne,* 915 F.2d 542, 545 (9th Cir. 1990) (recognizing a "recent ground swell of support for mandating a percentage-of-the-fund approach in common fund cases"). By contrast, the lodestar multiplier method creates a disincentive for early settlement, since counsel's lodestar will necessarily be low early in the litigation. *Vizcaino*, 290 F.3d at 1050 n.5 ("[I]t is widely recognized that the lodestar method creates incentives for counsel to expend more hours

6

than may be necessary on litigating a case so as to recover a reasonable fee, since the lodestar method does not reward early settlement."). The percentage method is also easier for courts to calculate than any alternative method, since, unlike the lodestar multiplier method, it does not require the court to evaluate the reasonableness of hours incurred or hypothesize about how day-to-day or hour-by-hour decisions might have been made differently by counsel. *Id.*; *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989).

In light of these benefits, courts have resoundingly approved the percentage of the fund method for calculating a reasonable fee award in common fund cases.

**C.   Given the Results and the Totality of the Circumstances, the Requested Fee Award is Within the Range of Reasonableness Under Ninth Circuit Case Law.**

In determining what constitutes a reasonable percentage of a settlement fund for purposes of calculating common fund fees, the Ninth Circuit has stated that courts look to a "benchmark" percentage of 25 percent of the total fund. *Vizcaino*, 290 F.3d at 1047; *Paul, Johnson, Alston & Hunt*, 886 F.2d at 272; *Six Mexican Workers*, 904 F.2d at 1311; *Morganstein*, 768 F. Supp. at 728. However, courts have recognized that the 25 percent benchmark may increase or decrease with the size of the settlement. For example, in approving an award of 28 percent of a $96,885,000 settlement fund, the *Vizcaino* court surveyed attorneys' fees awards in 34 so-called "megafund" cases – i.e., common fund settlements of $50-200 million. *Vizcaino*, 290 F.3d at 1046 n.1 & Appendix. In this mega fund range, a majority of fee awards were "clustered in the 20-30 percent range." *Id.* at 1050 n.4 & Appendix. The court recognized the so called "increase-decrease rule"; that is, the percentage of an award generally decreases as the common fund increases, and vice versa. *Id.* at 1047.  Thus, in common fund settlements of less than $50 million, such as this one, a higher percentage is often awarded. *See, e.g., In re Pacific Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming award of 33% of $12 million common fund); *In re Activision Sec. Litig.*, 723 F. Supp. at 1375 (awarding 32.8% of $3.5 million common fund); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 460 (9th Cir. 2000)

1    (affirming award of 33.3% of $1.725 million); *Cicero*, 2010 WL 2991486 (C.D. Cal. July

2    27, 2010)(awarding 30% of common fund in wage and hour class settlement); *In re*

3    *Public Serv. Co. of New Mexico*, No. 91-0536M, 1992 WL 278452, at *1, at *12 (S.D.

4    Cal. July 28, 1992) (awarding 33%); *Antonopulos v. N. Am. Thoroughbreds, Inc.*, No. 87-

5    0979G(CM), 1991 WL 427893, at *1, *4 (S.D. Cal. May 6, 1991) (awarding one-third);

6    *In re M.D.C. Holdings Sec. Litig.*, No. 89-cv-0090, 1990 WL 454747, at *1, *10 (S.D.

7    Cal. Aug. 30, 1990) (awarding 30%); *see also In re Xcel Energy, Inc., Securities,*

8    *Derivative & "'ERISA" Litig.*, 364 F. Supp. 2d 980, 998 (D. Minn. 2005) (citing common

9    fund fee awards of 25%-36% in 11 class action settlements in the 8th Circuit).

10           Here, the requested 28% fee is reasonable given the case law and the results

11   obtained and the uncertainty and complexity of the litigation.   Counsel accepted and

12   litigated this action solely on a contingency fee basis, and have received no compensation

13   for the outlay of attorney time, nor for any of the expenses incurred.  Moreover, there has

14   never been any guarantee that Counsel would ever be paid for that time or reimbursed for

15   those costs. No matter how many hours put in, no matter how burdensome the litigation,

16   there would be no payment unless Plaintiffs prevailed.  (Ex. 1, ¶ 19-21; Ex. 2, ¶ 20-22).

17           This litigation involved many significantly complex issues, which exacerbated the

18   risk of nonrecovery.  (Ex. 1, ¶ 10, 14-18, 22-23, 26; Ex. 2, ¶ 11, 15-19, 23-24, 27).  As set

19   forth in the Motion to Approve the Settlement, Defendant asserted several legal and

20   factual counter-arguments, from lack of personal knowledge of the named Plaintiffs, to

21   the existence of arbitration agreements that may have prevented people from joining the

22   collective action at all, to lack of willful conduct.  (*See* Motion to Approve Settlement, p.

23   10-14).  In addition, the named Plaintiffs were exposed to Defendant's argument that

24   each Collective Member operated under the direction of supervisors at different call

25   centers in more than 10 different states handling different types of job duties who

26   operated their teams differently than the teams in which the named Plaintiffs worked.

27   (*Id.*). All of these complex issues meant that Plaintiffs could lose on collective action

28   certification,  decertification,  summary  judgment,  trial,  or  appeal,  which  created

substantial risk that Plaintiffs and Collective Members would recover nothing in this

litigation. In short, Plaintiffs were by no means assured of success, and Collective Counsel were not assured of any remuneration for the time invested.

The reasonableness of this fee award is further supported by the high quality of Collective Counsel's legal representation. As their Declarations reflect, Collective Counsel's diligent and efficient pursuit of this matter positioned Plaintiffs to successfully settle this case for $4,958,184.00, to provide meaningful redress for the thousands of Collective Members, and to avoid the expense, risk, and delay of protracted litigation. Collective Counsel's significant experience litigating nationwide overtime cases on behalf of hourly employees and phone representatives like Collective Members played an important part in their ability to focus on the relevant issues quickly and secure a substantial settlement in the litigation.  (Ex. 1, ¶ 6-7, 15-18, 22; Ex. 2, ¶ 6-8, 16-19, 23).

As courts have often noted, the expeditious handling of litigation should be encouraged, rather than discouraged by discounting fees when the matter is resolved efficiently. *See, e.g.*, *Vizcaino*, 290 F.3d at 1050 n.5.  Collective Counsel's expeditious litigation of this case has resulted in a tremendous benefit to Collective Members.  Unlike a Rule 23 class action where the statute of limitations for the putative class members is tolled upon the filing of a lawsuit, in an FLSA collective action the limitations period for a particular person is not tolled until that person opts in to the lawsuit.  This settlement includes persons who worked for Defendant as far back as December 4, 2014.  Had the case not settled now, those persons who worked for Defendant in 2015 and a portion of 2016 likely would have received nothing for that period because, assuming the Court had certified a collective, their opportunity to opt in would probably have occurred in 2019 and the effective period for that opt in goes back no more than three years.

Finally, the requested fee is reasonable when compared with fees awarded in other wage and hour collective and class actions, such as:

(1) *Garcia v. Gordon Trucking, Inc.,* No. 1:10–CV–0324, 2012 WL 5364575 (E.D. Cal. Oct. 31, 2012) (court approving attorneys' fees in the amount of 33 percent of the common fund);

(2) *Bond v. Ferguson Enterprises, Inc.,* No. 1:09–cv–01662, Doc. No. 59, 2011 WL 2648879 (E.D. Cal. June 30, 2011) (court approved attorneys' fees in the amount of

30 percent of the common fund);

(3) *Vasquez v. Coast Valley Roofing,* 266 F.R.D. 482 (E.D. Cal.2010) (wage-and-hour action putative class-action settlement where court approved award of attorneys' fees in the amount of 33.3 percent of the common fund);

(4) *Benitez v. Wilbur,* No. 1:08–cv–01122, Doc. No. 52 (E.D. Cal., Dec. 15, 2009) (awarding 33.3 percent of the benefit to the class in attorneys' fees);

(5) *Chavez v. Petrissans,* Case No. 1:08–cv–00122, Doc. No. 89 (E.D. Cal. Dec. 15, 2009) (court approved awards of attorneys' fees of 33.3 percent of the common fund);

(6) *Romero v. Producers Dairy Foods, Inc.,* No. 1:05–cv–0484, 2007 WL 3492841, at *4 (E.D. Cal. Nov. 14, 2007) (class action settlement where court approved attorneys' fees in the amount of 33 percent of common fund);

(7) *Baganha v. Cal. Milk Transport,* No. 1:01–cv–05729, Doc. No. 147 (E.D. Cal. 2009)(class action settlement where court approved attorneys' fees in the amount of 31.25 percent of settlement amount); and

(8) *Randall Willis et al. v. Cal. Western Transport and Earl Baron et al. v. Cal Western Transport*, No. 1:00–cv–05695 (E.D. Cal. Oct. 12, 2012)(approved fees of 33% of the settlement fund).

## D.   The Requested Fee Is Reasonable Under A Lodestar Crosscheck.

A cross-check of the percentage-based fee by comparison to Collective Counsel's lodestar confirms that the requested fee is reasonable. Under the lodestar method, the lodestar is calculated by multiplying the reasonable hours expended by a reasonable hourly rate. *Pennsylvania v. Delaware Valley*, 478 U.S. 546, 565 (1986). The court may then apply a multiplier to the lodestar to arrive at a reasonable fee. *Blum*, 465 U.S. at 888. The appropriate multiplier is determined in light of certain factors, including:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the requisite legal skill necessary; (4) the preclusion of other employment due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount at controversy and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975); *Hanlon v. Chrysler*, 150 F.3d 1011, 1029 (9th Cir. 1998) (a lodestar figure "may be adjusted upward or downward to account for several factors including the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment") (citing *Kerr*). The Ninth Circuit requires "only that fee awards in common fund cases be reasonable under the circumstances." *Dunne*, 915 F.2d at 545.

Currently, Collective Counsel's lodestar is $698,925.00.  (Ex. 1, ¶ 26-27, 29; Ex. 2, ¶ 28-31). Thus, the requested fee currently results in a lodestar multiplier of about 2 which excludes time of local counsel Michelle Matheson, which will decrease in the coming months as Collective Counsel continue to perform work for the Collective Members as thousands of individuals participate in the settlement. This multiplier is well within the range of multipliers routinely approved in this Circuit in comparable common fund settlements. *See Vizcaino*, 290 F.3d at 1051 (approving multiplier of 3.65 and citing recent cases approving multipliers as high as 19.6); *Steiner v. Am. Broad. Co.*, 248 Fed. Appx. 780, 783 (9th Cir. 2007) (affirming award with multiplier of 6.85); *see also* Newberg, *Attorney Fee Awards,* § 14.03 at 14-5 (1987) ("multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied."); *Rabin v. Concord Assets*, No. 89 Civ. 6130 (LBS), 1991 WL 275757 (S.D.N.Y. 1991) (4.4 multiplier) ("In recent years multipliers of between 3 and 4.5 have become common.") (citations omitted); *Bucceletto v. AT&T*, No. 5:10-cv-00463 (N.D. Cal. June 30, 2011)(approving percentage of fund in wage and hour case that was equal to a 4.29 multiplier) (Group Ex. 4); *In re the PMI Group, Inc. Securities Litig.*, No. 08-1405 SI (N.D. Cal. Dec. 16, 2010) (approving 25% fee, resulting in 4.76 multiplier) (*Id.*); *Teeter v. NCR Corp.*, No. 08-297 (C.D. Cal. Aug. 6, 2009)(approving 25% fee, resulting in 4.61 multiplier) (*Id.*); *Doty v. Costco Wholesale Corp.*, No. 05-3241 (C.D. Cal. May 14, 2007) (approving 25% fee, resulting in 9.07 multiplier) (*Id.*); *The Music Force v. Viacom*, No. 04-8239 (C.D. Cal. Aug. 8, 2007) (approving 25% fee, resulting in 6.43 multiplier) (*Id.*).

11

Additionally, consideration of the *Kerr* and *Hanlon* factors demonstrates that the requested multiplier is warranted in this case:

### 1.    Time And Labor Required

Collective Counsel together have devoted approximately 1,630 hours to this litigation.  (Ex. 1, ¶ 26-27, 29; Ex. 2, ¶ 27-28, 31).  In reaching this figure, Collective Counsel have exercised billing judgment, ensuring that only time appropriately charged to a paying client was included.  (*Id.*).  In addition, Collective Counsel allocated work within the team efficiently to avoid duplication of effort. Moreover, the attached Declarations report time only through December 20, 2018, and thus exclude the additional hours that Collective Counsel have spent and will continue to spend securing approval of the settlement and administering the settlement to 29,366 individuals. Given that this settlement involves nearly 30,000 workers, Collective Counsel conservatively estimate that they will devote in the aggregate more than 200 additional hours to this case after December 2018.

### 2.    The Novelty And Difficulty Of The Questions Involved

Nationwide collective and class actions are particularly complex and involve particularly high risk, and this case was no exception.  (Ex. 1, ¶ 10, 14-18, 22-23, 26; Ex. 2, ¶ 11, 15-19, 23-24, 27).  Here, the Collective Members' different job duties in different call centers across the country, coupled with Defendant's argument that the Plaintiffs had no knowledge of the policies and practices at call centers outside Arizona, together created a substantial danger that there would be no recovery on a collective-wide basis at trial. Additionally, Defendant raised challenging defenses at the threshold questions of certification, decertification, liability, liquidated damages, and applicable limitations period. While Plaintiffs believe that they would have prevailed on these issues, that outcome was by no means assured. *See, e.g.*, *Steiner*, 248 Fed. Appx. at 782 (approving 6.85 multiplier in part because of risk assumed by Collective Counsel where "Defendants had alleged defenses that might have made class certification impossible"); *In re Cenco Inc. Securities Litigation*, 519 F.Supp. 322, 327 (N.D. Ill. 1981) ("The uncertainty as to the likelihood of success at trial made it unlikely that a settlement would be reached.

Thus, the contingency factor here was very high and for this reason, dictates that plaintiffs' counsel deserves significantly greater compensation than they would have absent the high risk factors."). The same circumstances justify the requested multiplier here.

### 3.    The Requisite Legal Skill Necessary

This case required Collective Counsel to be well-versed in issues of complex nationwide class and collective actions and overtime law. While these areas alone involve nuanced legal and practical challenges, the intersection of the two makes for particularly difficult litigation. Collective Counsel's ability in these areas rests in large part on their significant experience prosecuting nationwide collective overtime cases on behalf of hourly employees and call center employees particularly.  (Ex. 1, ¶ 6-7; Ex. 2, ¶ 6-8). *See Roberts*, 979 F. Supp. at 197 ("it is the skill, ingenuity, effort and risk of counsel that, in the final analysis, produces the result").

### 4.    The Preclusion Of Other Employment

Prosecution of this litigation precluded Collective Counsel from accepting other potentially profitable work. (Ex. 1, ¶ 19-21; Ex. 2, ¶ 20-22); *Parks v. Eastwood Ins. Servs., Inc.*, 240 Fed. Appx. 172, 175 (9th Cir. 2007) (approving increase to lodestar multiplier because "[p]reclusion from seeking other employment is a proper basis for an enhancement"); *Roberts*, 979 F. Supp. at 197.

### 5.    The Customary Fee

As set forth herein, the requested fee of 28% falls within the range of percentage of the funds and multipliers approved by the Ninth Circuit and district courts in this and other Circuits. *See Vizcaino*, 290 F.3d at 1052–54 (approving multiplier of 3.65 and citing a survey of class settlements listing multipliers as high as 19.6); *Steiner*, 248 Fed. Appx. at 783 (approving multiplier of 6.85). In light of both the customary percentage and the range of multipliers commonly approved, Plaintiffs' fee request is reasonable.

Collective Counsel's hourly rates are also reasonable. The rates are commensurate with those prevailing in the applicable market for attorneys with comparable skill and

experience litigating complex wage and hour class and collective and class actions. (Ex. 1, ¶ 26; Ex. 2, ¶ 29).

### 6.   Whether The Fee Is Contingent

Collective Counsel undertook this litigation on a purely contingent basis, with no assurance of recovering attorneys' fees or out-of-pocket costs.  (Ex. 1, ¶ 19-21; Ex. 2, ¶ 20-22). A multiplier enhancement is appropriate to compensate counsel for representing a class despite the risk that counsel may not be paid at all. *See, e.g.*, *Vizcaino*, 290 F.3d at 1051 ("'courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases.'")(citations omitted).

### 7.   Amount Of Time Spent For Results

Collective Counsel achieved excellent results quickly and efficiently. As the Ninth Circuit held in *Vizcaino*, Collective Counsel should not "receive a lesser fee for settling a case quickly; in many instances, it may be a relevant circumstance that counsel achieved a timely result for Collective Members in need of immediate relief." 290 F.3d at 1050 n.5. *See also Sherin v. Smith*, Fed. Sec. L. Rep. (CCH) P 93, 582 (E.D. Pa. October 23, 1987) ("[T]he commitment of attorneys' hours employed in this matter, viewed in light of the commitment which would have been required to litigate this to a conclusion, requires a substantial upward adjustment of the lodestar in order to fulfill the goal of this analysis – to determine a fair and reasonable fee. It is entirely appropriate to reward expeditious and efficient resolution of disputes in this matter.").

### 8.   Results Obtained

Collective Counsel have obtained excellent results for the Collective Members. The $4,958,184.00 common fund represents a significant recovery per person.  Under the proposed settlement, the average distribution per person will be approximately $120.00 and the maximum distribution per person is estimated to be in excess of $850.00. 29,366 individuals are eligible for such payments.

Large overtime cases can present significant challenges, especially where the plaintiffs, as here, worked in many different facilities across more than ten different states.  The benefit conferred to the public also supports a multiplier enhancement. *See*

*e.g.*, *In re Cenco*, 519 F. Supp. at 327 (approving multiplier of 4 on public policy grounds where "[t]he public has also benefitted from this litigation for it helps insure that state and federal regulations are enforced and provides incentives for private actions in the future."). Here, the settlement furthers important public policy objectives by incentivizing corporate compliance with the law and by demonstrating the viability of private enforcement.

### 9. Experience, Reputation, And Ability Of The Attorneys

Collective Counsel's experience, reputation, and ability, which are detailed in the accompanying Declarations, support a multiplier as well. (Ex. 1, ¶ 6-7, 26; Ex. 2, ¶ 6-8, 29). There are few law firms with Collective Counsel's combination of breadth and depth of experience and ability, particularly with respect to call center collective actions. (Ex. 1, ¶ 6-7; Ex. 2, ¶ 6-8). *See Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 197 (S.D.N.Y. 1997) (emphasizing the "extraordinary skill and effort on the part of plaintiffs' counsel…[I]t is the skill, ingenuity, effort and risk of counsel that, in the final analysis, produces the result.").

### 10. Undesirability Of The Case

The risk and complexity summarized above demonstrate that recovery was not guaranteed by any means. Many other attorneys experienced in employee rights litigation might have refused to pursue the scope that Collective Counsel pursued. This fact underscores the appropriateness of a multiplier enhancement.

### 11. Nature And Length Of Relationship With The Client

Lead Plaintiffs Harris and Kerness approached Collective Counsel in 2017 seeking legal advice as to whether Defendant had properly paid them overtime in compliance with the law. (Ex. 1, ¶ 24-25; Ex. 2, ¶ 25-26). Their decision to retain the Collective Counsel was based on Counsel's record of success in similar past cases on behalf of call center employees, and in other wage and hour collective and class actions. (*Id.*). Throughout the litigation, Collective Counsel have maintained a close and productive relationship with Mr. Harris and Mr. Kerness. (*Id.*).

### 12. Awards In Similar Cases

15

As set forth in pages 3, 4, 6, 7 and 9 above, the requested 28% fee is reasonable under Ninth Circuit case law and common fund fees in similar cases.

### E.    Collective Counsel Are Entitled To Recover Their Out-Of-Pocket Expenses, Which Are Reasonable And Have Inured To The Benefit Of The Class.

Collective Counsel seek reimbursement from the fund for the out-of-pocket expenses incurred for the Collective Members' benefit during this litigation. "[A]n attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Norris v. Mazzola,* 2017 WL 6493091, * 14 (N.D. Cal. Dec. 19, 2017); *Avila v. Cold Spring Granite Co.*, No 16-cv-001533, 2018 WL 400315 (E.D. Cal. 2018); *accord Smith*, 2016 WL 2909429, *9 ("An attorney is entitled to 'recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client.'") (quoting *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994). Such expenses regularly include postage, investigation costs, copying costs, hotel bills, meals, messenger services, court costs, electronic research, court reporter costs, delivery fees, and mediation expenses. *See, e.g., Ruiz v. XPO Last Mile, Inc.*, 2017 WL 6513962, *8 (S.D. Cal. Dec. 20, 2017); *Leverage v. Traeger Pellet Grills, LLC*, 2017 WL 6405619, *7 (N.D. Cal. Dec. 15, 2017)

To date, Collective Counsel have incurred $21,919.98 in litigation costs and expenses and will incur additional costs through the conclusion of this matter.  (Ex. 1, ¶ 28; Ex. 2, ¶ 32). These costs include filing fees, payment to the mediator, traveling to and from depositions, deposition transcript fees, court reporter fees, traveling to Los Angeles, Ca. for the mediation, photocopying, mailing expenses, and other reasonable litigation-related costs.  (*Id.*). This figure is reasonable in light of the complexity and size of the action. All of these costs were necessary and made for the benefit of the Collective.

### F.    The Requested Collective Representative Service Awards Are Reasonable.

"[N]amed plaintiffs…are eligible for reasonable incentive payments" as part of a class action settlement. *Staton*, 327 F.3d 938 at 977. Service or incentive payments

constitute "an essential ingredient of any class action," because they provide an incentive to bring important cases that have a broad impact benefiting a class of individuals, not just the plaintiff. *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). These payments also recognize the Plaintiffs' time, effort, and inconvenience, as well as the risk they are exposed to in asserting their and others' rights in a particularly public and powerful manner. By bringing the litigation on behalf of others in addition to themselves, class and collective representatives in employment class actions provide a valuable service to their fellow workers. More broadly, they promote the public policy goals set forth by the legislatures that enacted the underlying substantive statutes at issue.

For these reasons, Ninth Circuit courts routinely approve the award of service payments to class representatives for their assistance to a plaintiff class. *See e.g.*, *Cicero v. DirectTV, Inc.*, No. 07-cv-1182, 2010 WL 2991486 (E.D. Cal. July 27, 2010)(approving $12,500 incentive award in wage and hour class settlement); *Glass v. UBS Financial Services, Inc.*, Case No. 06-cv-4068, 2007 WL 221862, at *16-17 (N.D. Cal. Jan. 26, 2007) ($25,000 each to four class representatives); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) ($50,000 to one class representative); *Stevens v. Safeway, Inc.*, No. CV 05-cv-01988, 2009 U.S. Dist. LEXIS 17119, *34-37 (C.D. Cal. Feb. 25, 2008) ($20,000 and $10,000 to two class representatives); *Doty* ($20,000 each to two class representatives) (Group Ex. 4).[2]  When evaluating the reasonableness of an incentive award, courts may consider factors such as "'the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions,…the amount of time and effort the plaintiff expended in pursuing the litigation…and reasonabl[e] fear[s of] workplace retaliation.'" *Staton*, 327 F.3d at 977 (quoting *Cook*, 142 F.3d at 1016); *Singleton v. Domino's Pizza,* 976 F. Supp. 2d 665, 691 (D. Md. 2013) (noting that named plaintiffs

[2] *See also In Re Janney Montgomery Scott LLC Financial Consultant Litig.*, No. 06-3202, 2009 U.S. Dist. LEXIS 60790, at *35-37 (E.D. Pa. July 16, 2009) ($20,000 each to three class representatives); *Wade v. Kroger Co.*, No. 3:01-CV-699, 2008 WL 4999171, at *13 (W.D. Ky. Nov. 20, 2008) ($30,000 each to multiple class representatives); *Wright v. Stern*, 553 F. Supp. 2d 337, 342 (S.D.N.Y. 2008) ($50,000 each to 11 class representatives ); *Hainey v. Parrott*, No. 02-733 2007 WL 3308027 (S.D. Ohio Nov. 6, 2007) ($50,000 each to four class representatives).

risk future employers finding out, through a simple Google search, that they filed a class action lawsuit against their prior employer); *Van Vranken*, 901 F.Supp. at 299; *Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 435 (S.D.N.Y. 2007) ("A class representative…whose future employability has been impaired may be worthy of receiving an additional payment, lest others be dissuaded.").

Here, the $10,000 service payments to Mr. Harris and Mr. Jordan sought under the proposed settlement reflects their considerable efforts in making possible a valuable settlement for 29,366 other Collective Members, expending significant time and effort since inception of the case, and subjecting themselves to risk of unfavorable treatment by future employers.  (Ex. 1, ¶ 24-25; Ex. 2, ¶ 25-26).

**IV.**      **CONCLUSION**

For the foregoing reasons, Collective Counsel respectfully request that the Court issue an order approving the requested payments of $1,388,291.50 in attorneys' fees, $21,919.98 in costs, and $10,000.00 to Kenneth Harris, Jr. and Jordan Kerness as Collective representative service payments.

Respectfully submitted,
Kenneth Harris, Jr. and Jordan Kerness, individually and on behalf of a collective of persons similarly situated.

/s/ James X. Bormes
One of Plaintiff's attorneys

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 21, 2018, I transmitted the attached document to counsel for Wells Fargo by CM/ECF via the addresses listed below:

Theresa A. Kading
Glenn L. Briggs
Kading Briggs LLP
100 Spectrum Center Drive, Suite 800
Irvine, CA 92618
tkading@kadingbriggs.com
gbriggs@kadingbriggs.com

Pavneet S. Uppal
Shayna Helene Balch
Fisher & Phillips LLP
3200 N. Central Ave., Suite 805
Phoenix, AZ
85012-2425
puppal@fisherphillips.com
sbalch@fisherphillips.com

/s/ James X. Bormes
One of Plaintiffs' Attorneys