1
2
3
4
5
6           **IN THE UNITED STATES DISTRICT COURT**
7              **FOR THE DISTRICT OF ARIZONA**
8

9  | Kenneth Harris, Jr. and Jordan Kerness, | No.   CV-17-01146-PHX-DMF (lead) |
   individually and on behalf of all others |        CV-17-02516-PHX-DMF (member)
10 similarly situated,

11                        Plaintiffs,

12 v.                                          **ORDER**

13 Wells Fargo Bank, N.A.,

14                        Defendant.
15

16

17         This consolidated matter has been assigned to the undersigned after consent of the

18 parties pursuant to the provisions of 28 U.S.C. § 636(c).  *See Koby v. ARS Nat'l Servs.,*

19 *Inc.*, 846 F.3d 1071, 1076 (9th Cir. 2017) (holding this statute requires consent of named

20 parties and not the consent of unnamed class members).  (Doc. 92).[1]  Pending before the

21 Court are:  Plaintiffs' Unopposed Motion and Memorandum for Approval of the Parties'

22 [Fair Labor Standards Act] Collective Action Settlement (Doc. 85); and Plaintiffs'

23 Unopposed Motion for Award of Attorneys' Fees, Reimbursement of Costs and Expenses,

24 and Award of Collective Representative Service Payments (Doc. 86).  For the reasons set

25 forth below, the Court will grant the Plaintiffs' unopposed motions as is set forth below.

26
   _____

27         [1] The designation of lead versus member case in this Order's caption directs the
   clerk's office regarding the proper electronic filing of the Order.  Counsel may continue to
28 use the caption format they have used since consolidation and should continue filing only
   in the CV-17-01146-PHX-DMF case.

## I.      BACKGROUND

Co-Plaintiff Kenneth Harris, Jr. filed a collective action complaint against Defendant in this case in April 2017. (Doc. 1)  Plaintiff Harris brought his action on behalf of current and former employees at Defendant's call center in Chandler, Arizona. (*Id.*) Harris moved to amend the complaint to include individuals employed at Defendant's call center in Tempe, Arizona. (Docs. 44, 55)  Co-Plaintiff Jordan Kerness filed a separate collective action against Defendant in July 2017 on behalf of himself and similarly situated employees at Defendant's Rose Garden Lane call center in Phoenix, Arizona. (CV-17-02516-PHX-DMF ("Kerness Compl." Doc. 1 at 2)  Each complaint asserted violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"). The Plaintiffs argued Defendant violated FLSA by failing to pay for all overtime associated with time spent for booting up work computers and opening software needed to handle credit card customer service calls before work shifts and securing their workstations and proprietary information before leaving after shifts. (Kerness Compl. Doc. 1 at 2)  Plaintiff Harris alleged the uncompensated time averaged about 15 to 20 minutes a day (Doc. 1 at 3), while Plaintiff Kerness stated the uncompensated overtime was about 5 to 10 minutes a day (Kerness Compl. Doc. 1 at 2).  Each Co-Plaintiff declared FLSA required the uncompensated overtime to be paid at a pay rate of time and a half. (Kerness Compl. Doc. 1 at 3)

The record indicates the parties had exchanged initial disclosures by July 2017. (Doc. 26 at 1)  Additionally, the Court addressed discovery disputes, and during one hearing, Plaintiffs' counsel informed the Court it was likely Plaintiffs would file an amended complaint to add Defendant's employees working in states outside of Arizona and would move to consolidate the Harris and Kerness actions. (Doc. 42 at 45-46)  In December 2017, the parties stipulated to stay both actions pending completion of mediation. (Doc. 58)  On joint motion by the parties, the separate actions filed by Mr. Harris and Mr. Kerness against Defendant were ordered consolidated on October 16, 2018. (Doc. 80)  On May 9, 2019, the parties were permitted to file a second amended consolidated collective action complaint for settlement purposes only that expanded the

1    definition of the collective to include individuals who worked in Defendant's call centers

2    in other states as well as in Arizona.  (Docs. 96, 97)

3        The parties notified the Court they had reached a settlement on October 19, 2018

4    and the Court ordered them to file a stipulation to dismiss and a joint motion to approve a

5    settlement.  (Doc. 83)  The currently pending motions were filed on December 21, 2018.

6    (Docs. 84-87)  The parties consented to the exercise of jurisdiction by a United States

7    Magistrate Judge.  (Doc. 92)  A hearing on the pending motions was held on May 9, 2019.

8        **A.    Relief requested in pending motions**

9        Plaintiffs move for:  (1) approval of the proposed settlement agreement and

10   certification of a collective action pursuant to the FLSA for settlement purposes only; (2)

11   approval of the notice of collective action settlement to be sent to settlement collective

12   members; (3) appointment of Plaintiffs' counsel as counsel for the collective; (4)

13   appointment of the named Plaintiffs as collective representatives; and (5) appointment of

14   Rust Consulting as the third-party claims administrator.  (Doc. 85 at 6)  Plaintiffs have also

15   filed an unopposed motion (Doc. 86) requesting an award of attorneys' fees in the amount

16   of $1,388,291.50, reimbursement of litigation-related costs and fees totaling $29,919.98,

17   and service payments to named Co-Plaintiffs Harris and Kerness of $10,000.00 each.  (*Id.*

18   at 8)

19       **B.    Proposed settlement terms**

20       The parties have agreed on a gross settlement figure of $4,958,184.00.  (Doc. 85-1

21   at 7)  This figure comprises attorneys' fees, litigation costs and expenses, service payments

22   to Mr. Harris and Mr. Kerness as class representatives, and the net settlement fund.  (*Id.*)

23   The net settlement fund totals $3,519,892.50 and would be distributed to members of the

24   collective according to a set formula based on a minimum distribution and additional

25   compensation determined by hours of overtime worked.  (*Id.* at 8-9)  For the purposes of

26   settlement, the parties agreed to a collective of 29,366 employees who would be mailed a

27   notice of settlement accompanied by a settlement check.  (Doc. 85 at 7)  A collective

28   member who decides to participate in the settlement will cash the settlement check and

1  agree to release her wage and hour claims against Defendant covered by the settlement

2  agreement. (Doc. 85-1 at 6, 16-19)  A member not wishing to participate in the settlement

3  will simply not cash the settlement check mailed with the notice and will retain all rights

4  to take independent action.  (Doc. 95 at 2, 3)

5          The parties agree the collective members are similarly situated employees for the

6  purposes of the settlement only.  (Doc. 85-1 at 12)  Participating collective members would

7  agree to the service payments to Mr. Harris and Mr. Kerness, to the administration of the

8  settlement by Rust Consulting, Inc., and to attorneys' fees and costs as set forth in the

9  notice.  (*Id.* at 10-11, 13)  Defendant would pay all costs and fees of Rust Consulting, Inc.

10  and the employer's obligation for payroll taxes on the settlement, apart from and in addition

11  to, its funding of the gross settlement amount.  (Doc. 85 at 7)

12  **II.      STANDARD OF REVIEW**

13          The FLSA regulates, among other labor issues, minimum wage and overtime pay,

14  and prohibits employers from retaliating against employees who exercise their rights under

15  the Act.  *See Dellinger v. Science Applications Intern. Corp.*, 649 F.3d 226, 227-229 (4th

16  Cir. 2011).  The FLSA provides that no employer "shall employ any of his employees who

17  in a workweek is engaged in commerce ... or is employed in an enterprise engaged in

18  commerce ... for a workweek longer than forty hours unless such employee receives

19  compensation" for hours worked beyond forty hours "at a rate not less than one and one

20  half times" the employee's regular pay rate.  29 U.S.C. § 207(a)(1).  The Act requires that

21  in any action to enforce § 207, the Court "shall, in addition to any judgment awarded to the

22  plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and

23  costs of the action."  29 U.S.C. § 216(b) (emphasis added).

24          "Unlike most private settlements negotiated between parties in a civil action for

25  damages, in a FLSA case or class action, the parties must seek the district court's approval

26  of the settlement's terms to ensure that it is enforceable and fair."  *Juvera v. Salcido*, 2013

27  WL 6628039, at *3 (D. Ariz. 2013).  Prior to approving the settlement of an FLSA

28  collective action, a district court will perform an assessment similar to that required for

Rule 23 class action settlements.  However, the fairness assessment for a FLSA collection action settlement is much less stringent, because individuals who do not opt-in as parties to the FLSA collective action are not bound by the settlement.  *Millan v. Cascade Water Services, Inc.*, 310 F.R.D. 593, 607 (E.D. Cal. 2015).  District courts in the Ninth Circuit have evaluated proposed FLSA settlement under the standard established by the Eleventh Circuit in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982), which requires that the settlement constitute a fair and reasonable resolution of a bona fide dispute over FLSA provisions.  *Gonzalez-Rodriguez v. Mariana's Enterprises*, 2016 WL 3869870, at *3 n. 1 (D. Nev. July 14, 2016) (citing district court decisions from the Southern and Northern Districts of California and the District of Arizona.)  *See also Fontes v. Drywood Plus, Inc.*, 2013 WL 6228652, at *7 (D. Ariz. Dec. 2, 2013) (citing *McKeen-Chaplin v. Franklin American Mortg. Co.*, 2012 WL 6629608, at *2 n.3 (N.D. Cal. 2012) (citing cases)).

A bona fide dispute exists when there are legitimate questions about "'the existence and extent of Defendant's FLSA liability.'"  *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F.Supp.3d 1164, 1172 (S.D. Cal. 2016) quoting *Ambrosino v. Home Depot. U.S.A., Inc.*, No. 11cv1319 L(MDD), 2014 WL 1671489 (S.D. Cal. Apr. 28, 2014).  In *Selk*, the Southern District of California further explained that a bona fide dispute requires there to be:

> "some doubt ... that the plaintiffs would succeed on the merits through litigation of their [FLSA] claims." *Collins v. Sanderson Farms*, 568 F. Supp. 2d 714, 719–20 (E.D. La. 2008); *see also Mamani v. Licetti*, No. 13–CV–7002 (KMW)(JCF), 2014 WL 2971050, *2 (S.D.N.Y. July 2, 2014) (explaining that to demonstrate a bona fide dispute under the FLSA "[t]he employer should articulate the reasons for disputing the employee's right to a minimum wage or overtime, and the employee must articulate the reasons justifying his entitlement to the disputed wages") (internal citation omitted). If there is no question that the FLSA entitles plaintiffs to the compensation they seek, then a court will not approve a settlement because to do so would allow the employer to avoid the full cost of complying with the statute. *See Socias v. Vornado Realty L.P.,* 297 F.R.D. 38, 41 (E.D.N.Y.2014) (Without judicial oversight ... employers may be more inclined to offer, and

employees, even when represented by counsel, may be more inclined to accept, private settlements that ultimately are cheaper to the employer than compliance with [FLSA]."); *Hogan v. Allstate Beverage Co., Inc.,* 821 F. Supp. 2d 1274, 1282 (M.D. Ala. 2011) ("Any amount due that is not in dispute must be paid unequivocally; employers may not extract valuable concessions in return for payment that is indisputably owed under the FLSA.").

*Id.* "'If the settlement reflects a reasonable compromise over issues such as FLSA coverage or computation of back wages . . . , the court may approve the settlement in order to promote the policy of encouraging settlement of litigation.'" *Fontes*, 2013 WL 6228652, at *5 (quoting *Khanna v. Inter-con Sec. Sys., Inc.*, No. CIV S-09-2214, 2012 WL 4465558, at * 10 (E.D. Cal. Sept. 25, 2012) (citations and internal quotation marks omitted)). Although it appears there are "no agreed upon factors to consider in evaluating a proposed FLSA settlement[,]" courts have utilized relevant factors applicable to the approval of class action settlements. *Almodova v. City and Cty. of Honolulu*, Civil No. 07-00378, 2010 WL 1372298, at *4 (D. Haw. Mar. 31, 2010).

The Ninth Circuit has instructed that a court evaluating a proposed class action settlement pursuant to Rule 23(e) for overall fairness will balance the factors of: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; and (7) the reaction of class members to the proposed settlement. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

## III.    DISCUSSION

### A.    Certification of an FLSA Collective

Plaintiffs request that this matter be certified as a collective action under the FLSA for settlement purposes only. (Doc. 85 at 9, 22-23) The FLSA authorizes an employee to represent similarly situated employees in a suit against their employer for the failure to pay minimum wage or overtime compensation. 29 U.S.C. § 216(b). Before participating as a party in a collective action under FLSA, an employee must give his consent in writing. 29

U.S.C. § 216(b); *see Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (rights in a collective action under the FLSA are dependent on the employee receiving accurate and timely notice about the pendency of the collective action so that the employee can make informed decisions about whether to participate).

This Court has discretion to decide whether a collective action is appropriate. *Colson v. Avnet*, 687 F.Supp.2d 914, 924-25 (D. Ariz. 2010) (citation and punctuation marks omitted).   Neither the Ninth Circuit nor the FLSA itself has defined the term 'similarly situated' for purposes of certifying a collective action.  *Id.* at 925.  Generally, courts in the Ninth Circuit apply a two-step process in considering certification of a collective action class under the FLSA.  *Id.*  In applying this approach:

> the court determines, on an ad hoc case-by-case basis, whether plaintiffs are similarly situated. This requires the court to first make an initial notice stage determination of whether plaintiffs are similarly situated. At this first stage, the court requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan. If a plaintiff can survive this hurdle, the district court will conditionally certify the proposed class and the lawsuit will proceed to a period of notification, which will permit potential class members to opt-into the lawsuit. Once the notification period ends, the Court moves on to the second step of the certification process. At the second step, in response to a motion to decertify the class filed by a defendant, the court makes yet another determination whether the proposed class members are similarly situated; this time, however, the court utilizes a much stricter standard to scrutinize the nature of the claims.

*Id.* (citations and internal quotation marks omitted).  Here, for purposes of settlement, the parties stipulate that members of the collective action are similarly-situated.  (Doc. 85 at 9)  The putative class members appear to qualify as similarly-situated employees regarding the claims for overtime pay because their alleged injuries arose from Defendant's uniform policies and practices.   Under the FLSA's lenient standard the first step has been met.  Because Defendant will apparently not seek decertification of the class if the settlement is approved, the FLSA class can be certified for the purposes of settlement.

1

**B.    The parties present a bona fide dispute**

As the Plaintiffs' unopposed motion makes clear, the parties dispute the ultimate question of liability by Defendant under the FLSA.  (Doc. 85)  Defendant denies all liability alleged by Plaintiffs and asserts the collective members were paid for all time worked and all time the members recorded on their timesheets.  (*Id.* at 15)  In support of Defendant's argument, it contends that the failure to pay for pre-shift work resulted from the collective members' failure to follow Defendant's well-established policy governing recording time worked in a timesheet.  (*Id.*)  These arguments are supported by written policies and instructions. (*Id.*)  Moreover, Defendant argues that its call center employees were allowed a grace period of ten minutes after their shift started to prepare to handle calls.  (*Id.* at 15-16)  Defendant had written policies and reminders that off-the-clock work by call center employees was strictly prohibited, which could bear on an argument of good faith and willfulness.[2]  (*Id.* at 16)

Plaintiffs, on the other hand, contend that it was Defendant's policy or practice to knowingly require or permit call center employees to perform unpaid work before and after their shifts.  (Doc. 1 at 2, 5)  They assert that Defendant did not instruct call center employees to abstain from logging on to their computers or telephones before the start of their shift, or to not read company e-mails outside of shift hours.  (*Id.* at 5-6)  Plaintiffs assert the evidence demonstrates that Defendant was aware of, and assented to, this unpaid work and did nothing to prevent it.  (*Id.* at 7)

Considering these contending views on issues central to the case, and the fact that Plaintiffs are not clearly entitled to the compensation they seek, the Court is convinced that that this case involves a bona fide dispute between the parties.

**C.    The settlement agreement is fair and reasonable**

When parties agree to settle a class action, the court must do more than merely

---

[2] The statute of limitations for FLSA claims is two years but can be extended to three years if the violations are willful.  A violation is willful if the employer knew of or recklessly disregarded the risk that its conduct violated the FLSA. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).

accept the parties' resolution.  It must also satisfy itself that the proposed settlement is "fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  After considering the factors addressed by the Ninth Circuit in *Hanlon*, the Court finds the Settlement Agreement to be fair and reasonable under the FLSA.

> 1.    *Strength of Plaintiffs' case*

Plaintiffs conclude the settlement is fair and reasonable considering the relative strength of their case.  (Doc. 85 at 14-16)  They urge the Court to consider "whether 'there is a significant risk that litigation might result in a lesser recover[y] for the class or no recovery at all.'"  (*Id.* at 15, quoting *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 255 (N.D. Cal. 2015))  Plaintiffs assert they have a "strong case" but devote the bulk of their discussion to the evidence supporting Defendant's case, including Defendant's denial of all liability, the collective members' failure to follow written policies, the existence of the ten-minute grace period at the start of shifts, and written policies forbidding off-the-clock work.  (*Id.* at 15-16)  These significant challenges to Plaintiffs' case suggest that pursuing litigation poses a significant risk to Plaintiffs and the collective members and favors the settlement.  *Khanna*, 2014 WL 1379861, at *7.

> 2.    *Risk, expense, complexity, and likely duration of further litigation*

According to Plaintiffs, there is "significant risk" the collective members would "ultimately recover nothing."  (Doc. 85 at 16)  The clock-in data for Plaintiff Kerness indicates he logged into the call center system an average of 3 minutes, 45 seconds early for much of his employment, but also shows that he did not have unpaid pre-shift work for some of the time relevant to this action.  (*Id.* at 16-17)  Plaintiffs explain that such evidence could support a ruling that this degree of unpaid pre-shift work is *de minimis* and is not compensable, an affirmative defense that Defendant has argued.  (*Id.* at 17)  Additionally, Plaintiffs outline risks to certification such as the fact that the named Plaintiffs worked in Arizona but seek certification of collective members from call centers in more than ten states.  (*Id.*)  Further, Plaintiffs indicate they would have faced Defendant's "inevitable

motion" to decertify the collective or large numbers of opt-in plaintiffs.  (*Id.* at 18)
Plaintiffs also enumerate significant complexities and costs associated with trying claims
involving collective members located across the country, together with "near-certain"
appeals.  (*Id.* at 18-19)

Plaintiffs have demonstrated that significant litigation risks exist and suggest an
uncertain result, and that these considerations weigh in favor of approving the settlement.
*See Selk*, 159 F.Supp.3d at 1175-76 (citing *Chavarria v. New York Airport Serv., LLC,* 875
F. Supp. 2d 164, 173 (E.D.N.Y. 2012) (litigation risks favored finding the settlement fair
and reasonable where "the settlement provide[d] certain compensation to the class
members now rather than awaiting an eventual resolution that would result in further
expense without any definite benefit")).

### 3. *Amount offered in settlement*

Plaintiffs assert the settlement "significantly exceeds the upper range of amounts
commonly approved by courts." (Doc. 85 at 19-21)  Plaintiffs discuss another call center
case against Defendant in the Northern District of California, *Santini v. Wells Fargo*, No.
4:16-cv-01992.  (*Id.*)  Under the settlement of a collective action in that case, Plaintiffs
state that 2,224 phone bankers received unpaid overtime for approximately 15 minutes per
week.  (*Id.* at 20)  Plaintiffs note that the settlement in the instant matter is also for
approximately 15 minutes of overtime per week performed by a much larger number of
employees at several call centers.  (*Id.*)  Plaintiffs aver that the settlement agreement
represents approximately 79% of unpaid weekly overtime, based on the log-in data for
Plaintiff Kerness.  (*Id.*)  Plaintiffs list a number of cases from within the Northern District
of California, the Eastern District of New York and the Eastern District of Pennsylvania
where class action settlements were approved involving percentages of potential or
maximum recovery from between 2% and 50%.  (*Id.* at 20-21)  Plaintiffs have
demonstrated that settlement amounts offered in the proposed agreement are reasonable
and fair to the collective class.

1

4.      *Extent of discovery completed and the stage of the proceedings*

2      Plaintiffs state that while discovery is not completed, the parties "have engaged in

3  substantial discovery, including answering numerous sets of interrogatories and document

4  production requests, producing documents and collective-wide payroll data, [and] taking

5  depositions of a call center supervisor and call center manager[.]" (Doc. 85 at 21) Plaintiffs

6  state that the parties have "carefully investigated the claims and facts alleged," performed

7  "a thorough study" of applicable legal principles" and engaged in "a careful review of

8  documents and collective-wide payroll information." (*Id.*) Additionally, Plaintiffs explain

9  that the parties engaged in a full-day mediation with a nationally-recognized mediator.

10  (*Id.*)  Plaintiffs' counsel declared they had "conducted detailed analyses of Defendant's

11  data before, during, and after mediation."  (Doc. 85-5 at 8)

12      If the parties have "sufficient information to make an informed decision about

13  settlement," this factor will weigh in favor of approval.  *Linney v. Cellular Alaska P'ship*,

14  151 F.3d 1234, 1239 (9th Cir. 1998); *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d

15  454, 459 (9th Cir. 2000) (explaining that a combination of investigation, discovery, and

16  research conducted prior to settlement can provide sufficient information for class counsel

17  to make an informed decision about settlement).

18      In the settlement agreement, the parties state that prior to the mediation, "Defendant

19  provided Plaintiffs with documentation regarding its policies regarding timekeeping and

20  overtime and provided data compilations regarding the putative collective members."

21  (Doc. 88-1 at 5)  As noted, the Plaintiffs inform the Court there are "approximately 29,366"

22  of Defendant's employees in the collective, who will be offered a distribution of an average

23  of $120.00 per individual, with a maximum distribution of "in excess of $850.00."  (Doc.

24  85 at 7)  The settlement agreement provides that within 15 days of an order by the Court

25  approving the settlement, Defendant will submit to the settlement administrator the

26  following information for each member of the collective: name, social security number,

27  and last known address; and the number of weeks the member worked 40 or more hours

28  "in a relevant position at a relevant location during the Collective Period[.]"  (Doc. 88-1 at

14)  Plaintiffs' counsel, Thomas Ryan, attests in his declaration that he and co-counsel "thoroughly familiarized [them]selves with Defendant's wage and hour policies, the work history and payroll data produced by Defendant, and Defendant's record keeping policies and practices." (Doc. 85-4 at 8)  This evidence supports a conclusion that the parties have developed enough information to make an informed decision about settlement.  This factor weighs in favor of approval.

### 5.   Parties' counsel's experience and opinions

The opinions of counsel on whether a settlement is fair and reasonable should be accorded "considerable weight" because of their "familiarity with the litigation and previous experience with cases." *Larsen v. Trader Joe's Co.*, No. 11-cv-05188, 2014 WL 3404531, at *5 (N.D. Cal. 2014).  Mr. Ryan avers that he "is an experienced attorney with substantial experience as lead or co-lead counsel in wage and hour class and collective actions" and provides an extensive list of relevant cases.  (Doc. 85-4 at 2-4)  Mr. Ryan declares that he and co-counsel "gained a comprehensive knowledge of the facts and legal issues relating to the respective claims and defenses in this matter and had ample evidence on which to base an informed assessment of the parties' settlement." (*Id.* at 6-7)  He further concludes that based on counsel's knowledge of the case and the applicable law and their experience in other wage and hour class action cases, "the settlement is fair, reasonable, and adequate." (*Id.* at 7)

In his declaration, Plaintiffs' co-counsel James Bormes stated that his practice since 1988 had been focused on "representing employees in cases under the federal and state wage and hour laws, including the [FLSA] . . . ." (Doc. 85-5 at 2)  He further declared he had been lead counsel in "dozens of cases" in state and federal court and that many of these cases were collective actions proceeding pursuant to § 216(b) of the FLSA, including five collective actions in the District of Arizona.  (*Id.* at 3)  Mr. Bormes also averred that the settlement is fair, reasonable, and adequate based on his knowledge of the case, applicable law, and experience with other wage and hour class action cases.  (*Id.* at 6)  On balance, this factor weighs in favor of approving the settlement agreement.

6.    *Possibility of Fraud or Collusion*

In their unopposed motion for approval of the settlement, Plaintiffs contend there was no fraud or collusion underlying the settlement.  (Doc. 85 at 22)  They rely primarily on the circumstance that the settlement resulted from "intense adversarial arm's-length negotiations" following "substantial discovery" and "hard negotiations at mediation."  (*Id.*)  They further explain that the parties engaged in a "reasonable approach by using payroll record data to calculate the common fund to provide back overtime pay" and that the experienced mediator "assisted the parties throughout the process in exploring and negotiating the terms that ultimately resulted in the settlement."  (*Id.*)

Courts have held that "[t]he likelihood of fraud or collusion is low [where a settlement is] reached through arm's-length negotiations, facilitated by an impartial mediator."  *Slezak v. City of Palo Alto*, No. 16-CV-03224, 2017 WL 2688224, at *5 (N.D. Cal. June 22, 2017) (citing *City P'ship Co. v. Atlantic Acquisition Ltd. P'shp.*, 100 F.3d 1041, 1043 (1st Cir. 1996) ("When sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement.")).  The Ninth Circuit has instructed that courts should be "vigilant" about "more subtle signs" of collusion, such as where:  (1) counsel receive a disproportionate distribution of a settlement; (2) the class receives no money but class counsel is "amply rewarded" or the settlement is structured to provide overly generous payments to counsel but an unfair class settlement; and (3) "fees not awarded revert to defendants rather than be[ing] added to the class fund."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (citations omitted).

The Court does not discern in this case either overt or subtle evidence of any fraud or collusion.  The amount of individual payments to collective members has been based on employee time records to estimate the amount the members were allegedly undercompensated during the relevant period.  As is discussed below, the attorneys' fees requested are reasonable.  Accordingly, the apparent absence of evidence of fraud or collusion weighs in favor of approval of the FLSA settlement.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*7.      Conclusion*

After consideration of the relevant factors and representations by the parties, the Court concludes the Settlement Agreement is a fair and reasonable resolution of a bona fide dispute over FLSA coverage.

**D.      Attorneys' fees and costs**

"'Where a proposed settlement of FLSA claims includes the payment of attorney's fees, the court must also assess the reasonableness of the fee award.'" *Selk*, 159 F.Supp.3d at 1180 (quoting *Wolinsky v. Scholastic, Inc.*, 900 F.Supp.2d 332, 336 (S.D.N.Y. 2012)); *see also* 29 U.S.C. § 216(b) (in FLSA actions, a court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"). Courts may apply either the lodestar method or a percentage-of-recovery method to assess a reasonable attorney's fee where a settlement includes a common fund benefitting the entire class. *In re Bluetooth*, 654 F.3d at 942.

In the Ninth Circuit the benchmark for a reasonable fee award under the percentage-of-recovery method is 25%. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015) (citing *In re Bluetooth*, 654 F.3d at 941). If attorney's fees deviate from the 25% benchmark, "it must be made clear by the district court how it arrives at the figure ultimately awarded." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). Reasons to vary from the benchmark award of 25% include counsel achieving exceptional results, undertaking "extremely risky" litigation, obtaining benefits for the plaintiff class beyond the cash settlement fund, or handling the case on a contingency basis. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002); *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 954-55. "Selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048.

As noted, the settlement agreement provides for a fund of $4,598,184.00. (Doc. 85 at 7) Counsel for the collective are asking for attorneys' fees totaling $1,388,291.50. (*Id.*)

Case 2:17-cv-01146-DMF   Document 99   Filed 05/13/19   Page 15 of 21

The requested amount of attorneys' fees equates to 28% of the settlement fund.  (Doc. 86 at 11)

Plaintiffs state that counsel have achieved an excellent settlement for the collective members and note that counsel will continue to perform work in this matter during the notice period and later to assist the settlement administrator and responding to questions from collective members.  (Doc. 86 at 8)  They explain counsel have devoted 1,630 hours to the case so far, which they conclude equates to approximately $698,925.00 in attorneys' fees under the lodestar method.  (*Id.* at 10)  Plaintiffs have attached copies of district court orders from federal district courts in California approving attorneys' fees in class and collective actions.  (Doc. 86-6)  A June 2012 order by the Northern District of California approved a 25 percent of recovery fee and cited cases in which fees ranging from 25% to 45% were awarded.  (Doc. 86-6 at 1-5)  In *Vizcaino*, the Ninth Circuit upheld the district court's approval of attorneys' fees equaling 28% of the recovery obtained and concluded this was appropriate where counsel faced substantial risk of obtaining no compensation from the contingency case and where the case was complex and entailed lengthy litigation.  *Id.* at 1051.

The Court notes that counsel here took on this matter on a contingency basis and thereby assumed substantial risk of economic loss.  They obtained a significant benefit beyond the cash settlement fund when Defendant agreed to pay the costs of administering the settlement apart from the settlement fund.  Additionally, Plaintiffs' counsel have explained they anticipate bearing a significant obligation involving communication with potential collective action members during the 90-day period after they have received the notice and settlement check.  Given these circumstances, the Court concludes that an award at a rate 28% is fair and reasonable.  Accordingly, the Court will award Collective Counsels' attorneys' fees of $1,388,291.52, which is 28% of $4,958,184.00.

### E.    Plaintiffs' counsel's out-of-pocket expenses

Counsel state that as of the date of filing Plaintiffs' Unopposed Motion (Doc. 86) on December 21, 2018, they had incurred out-of-pocket litigation costs and expenses

- 15 -

totaling $21,919.98 and that they would continue to incur such expenses until conclusion of the case.  (Doc. 86 at 23)  Counsel explain that these costs comprise filing fees, deposition transcript and court reporter fees, payment to the mediator, travel for depositions, and photocopying and mailing costs.  (*Id.*)  These expenses are supported by the declarations of Thomas Ryan (Doc. 89) and James Bormes (Doc. 93).  "There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund."  *Ontiveros v. Zamora,* 303 F.R.D. 356, 375 (E.D. Cal 2014); *see also* 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.").  The Court finds that the amount requested in costs is reasonable under the circumstances and appropriately documented.  The Court will award these costs as requested.

### F.   Collective representative service awards

A district court may award an incentive payment to named plaintiffs in a FLSA collective action to compensate them for work done on behalf of the class.  *Jones* v. *Agilysys, Inc.*, No. C 12-03516, 2014 WL 2090034, at *3 (N.D. Cal. May 19, 2014).  To determine whether an incentive award is appropriate, a court will consider evidence including "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation."  *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

Named Plaintiffs Harris and Kerness seek $10,000.00 service awards each.  (Doc. 86 at 25)  Plaintiffs' counsel declare that Mr. Harris and Mr. Kerness have been active participants in the prosecution of this matter by discussing the facts of the case with counsel, providing documents and information, helping to draft document requests, explaining discovery provided by Defendant, and instructing counsel about Defendant's call center organization, the nature of the collective members' job duties, and the

1   information technology used.   (Doc. 86-1 at 8, Doc. 86-2 at 6-7)   The Court further
2   recognizes the personal, professional risks Plaintiffs assumed by bringing the actions
3   underlying this consolidated case.   Considering the extensive and valuable involvement of
4   co-Plaintiffs Harris and Kerness attested to by counsel, the Court concludes a service award
5   of $10,000.00 to each is reasonable and will be approved.

6          **G.    Settlement notice**

7          Plaintiffs' counsel have prepared a 7-page "Notice of Collective Action Settlement"
8   to notify potential collective action members of the terms of the proposed settlement and
9   includes:   (1) instructions on how to participate in the settlement and how to decline
10  participation; (2) basic information about the case; (3) an explanation of why the collective
11  action is being settled; (4) a description of the claims released by those participating in the
12  settlement; (5) the identities and contact information for counsel for Plaintiffs and the
13  collective; and (6) how to obtain additional information.   (Doc. 95)

14         The Court has discretion in its review of the form and content of the notice of
15  settlement. *Hoffmann-La Roche,* 493 U.S. 165, 170 (1989) (holding that review of the
16  terms of a proposed notice under § 216(b) should be left to the broad discretion of the trial
17  court).   "The overarching policies of the FLSA's collective suit provisions require that the
18  proposed notice provide accurate and timely notice concerning the pendency of the
19  collective action, so that potential plaintiffs can make informed decisions about whether to
20  participate." *Whitehorn v. Wolfgang's Steakhouse, Inc.,* 767 F.Supp.2d 445, 450 (S.D.N.Y.
21  2011) (citing *Hoffmann-La Roche*, 493 U.S. at 170).

22         The notice prepared for notification in this matter is clear, specific, and easily
23  comprehended.   The Court finds that it amply serves the purposes of § 216(b) and will
24  approve it.

25  **IV.    DISPOSITION**

26         For the reasons set forth above,

27  . . .

28  . . .

- 17 -

**THE COURT FINDS AS FOLLOWS:**

1.      This Court has jurisdiction over the subject matter of the Action, the Plaintiffs, the Collective Members, and the Defendant.

2.      The Parties have reached an agreement to settle all claims in the Action.

3.      The Court concludes that the Plaintiffs and the Collective Members are similarly situated and collective action certification for settlement purposes only is warranted.

4.      The proposed settlement is a fair and reasonable resolution and settlement of a bona fide dispute between the Parties.

5.      Pursuant to 29 U.S.C. § 201 et seq., the Settlement Agreement is fair, reasonable, and adequate to the named Plaintiffs and the Collective Members, and in their best interests, and in full compliance with all requirements of due process and federal law.

6.      The Notice of Settlement process described in the Settlement Agreement fully complies with the requirements of due process, the Federal Rules of Civil Procedure, and all other applicable laws.  The Notice of Settlement fully and accurately informs all Collective Members of the Settlement and their options regarding the Settlement, is reasonable, and is the best notice practicable under the circumstances.

7.      The requested award of $1,388,291.50 in attorneys' fees is reasonable under the percentage of the common fund method, as it is within the range of reasonableness under prior decision of courts in this Circuit and elsewhere.

8.      The requested fee award is also reasonable under the lodestar method.  The Court has reviewed the hours devoted to this case by Collective Counsel and their rates and concludes that they are reasonable.   The resulting multiplier of approximately 2 is reasonable in light of the time and labor required, the difficulty of the issues involved, the requisite legal skill and experience necessary, the excellent and relatively quick results obtained for the Collective Members, the contingent nature of the fee and risk of no payment, and the customary range of fees awarded.

9.      The $21,919.98 in litigation costs and expenses incurred by Collective Counsel have been adequately documented and were reasonably incurred for the benefit of the Collective Members.  The Court finds that reimbursement of these costs and expenses is justified.

10.      The requested collective representative service payments of $10,000 each for Mr. Harris and Mr. Kerness are fair and reasonable in light of the time and effort the named Plaintiffs expended for the benefit of the Collective Members, as well as the risk accepted by initiating the litigation and publicly representing the Collective Members.

**THEREFORE, IT IS HEREBY ORDERED**:

A.      That all defined terms contained herein shall have the same meanings as set forth in the Collective Action Settlement Agreement and Release filed with this Court ("Settlement Agreement");

B.      That the Court grants collective action certification of the Collective Members pursuant to 29 U.S.C § 216(b) for settlement purposes only;

C.      That the Settlement Agreement is approved in all respects and its terms and provisions shall be consummated;

D.      That the Court approves the Notice of Settlement;

E.      That the Court approves the settlement payments to be made to each Collective Member;

F.      That Collective Members shall have 90 days after the date of the settlement check to cash their settlement checks and participate in the settlement;

G.      That, except as otherwise provided in the Settlement Agreement or herein, the settling Parties are to bear their own attorneys' fees and costs;

H.      That the Court awards Plaintiffs' attorneys' fees in the amount of $1,388,291.50, counsel's out-of-pocket costs and expenses totaling $21,919.98, and service awards of $10,000.00 each to named Plaintiff Kenneth Harris, Jr. and to Plaintiff Jordan Kerness;

I. That this Court bars and permanently enjoins the named Plaintiffs and all Participating Collective Members from filing or prosecuting any action or proceeding, whether by way of a class, collective or as an individual, against any of the Released Parties for liability based upon the Released Claims, upon satisfaction of all payments and obligations hereunder, and that all Participating Collective Members are bound by this Order and by the terms of the Settlement Agreement, including releases provided for in the Settlement Agreement;

J. That the Settlement Agreement is not an admission by Defendant or by any other Released Party, nor is this Order a finding of the validity of any allegations or of any wrongdoing by Defendant or any other Released Party.  Neither this Order, the Settlement Agreement, nor any document referred to herein, nor any action taken to carry out the Settlement Agreement, may be construed as, or may be used as, an admission of any fault, wrongdoing, omission, concession, or liability whatsoever by or against Defendant or any of the Released Parties.  The Settlement Agreement is a settlement document and shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce the Settlement Agreement;

K. That Plaintiffs' attorneys James X. Bormes of the Law Office of James X. Bormes, P.C., Thomas M. Ryan of the Law Office of Thomas M. Ryan, P.C., and Michelle R. Matheson of Matheson & Matheson, P.L.C. are appointed as Collective Action Counsel;

L. That Plaintiffs Kenneth Harris, Jr. and Jordan Kerness are appointed as the Collective Representatives;

M. That Rust Consulting is appointed as third-party claims administrator;

N. That the Court hereby dismisses with prejudice the Action, all claims contained therein, including, without limitation, all collective claims, and all Released Claims against Released Parties;

O. That this Order, which dismisses with prejudice all claims brought in this lawsuit, shall not impact the rights of any persons who do not participate in this settlement;

P. That this Order resolves all issues in the case and closes the action;

Q.      That the Court retains jurisdiction with respect to the implementation and enforcement of the terms of the Settlement Agreement; and

R.      That within 150 days the parties shall file a report with the Court regarding the implementation of the Settlement Agreement.

Dated this 13th day of May, 2019.

_____

Honorable Deborah M. Fine
United States Magistrate Judge